# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ALEXANDER M. SHUKH, | Civil No. 10-404 (JRT/JJK) |
| Plaintiff, | |
| v. | |
| SEAGATE TECHNOLOGY, LLC, SEAGATE TECHNOLOGY, INC., SEAGATE TECHNOLOGY, and UNKNOWN OWNERS AND ASSIGNEES, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Constantine Gekas and John Gekas, **GEKAS LAW, LLP**, 11 South LaSalle Street, Suite 1700, Chicago, IL 60603; James H. Kaster, Katherine A. Manuel, and Sarah W. Steenhoek, **NICHOLS KASTER, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, for plaintiff.

Calvin L. Litsey, Chad Drown, Jeya Paul, Charles F. Knapp, Elizabeth Cowan Wright, and David J.F. Gross, **FAEGRE & BENSON LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for defendants.

Plaintiff Dr. Alexander Shukh brought this case against his former employer asserting thirteen claims related to the termination of his employment. Defendants moved to dismiss the claims. In response, Shukh moved for summary judgment as to inventorship and declaratory judgment, and brought a motion for a preliminary injunction. The Court finds that Shukh has standing to sue due to an injury to his reputational interests, but grants defendants' motion to dismiss Shukh's claims for breach of contract, rescission, breach of fiduciary duty, unjust enrichment, interference with

business expectancy, and for declaratory judgment.  The Court denies Shukh's motion for summary judgment, as genuine issues of material fact exist as to inventorship, and denies as moot Shukh's motion for summary judgment on his claim for declaratory judgment. The Court also denies Shukh's motion for a preliminary injunction as moot due to disclosures by defendants, and a lack of clarity regarding the Court's jurisdiction to award the relief requested.

## BACKGROUND

### I.    EMPLOYMENT AT SEAGATE

Shukh was employed by defendants Seagate Technology, LLC, Seagate Technology, Inc., and Seagate Technology (collectively "Seagate") from September 1997 until early 2009.   Shukh claims he was one of Seagate's most productive and distinguished scientists, and that he is a member of the Seagate Inventor Hall of Fame. (Shukh Decl. ¶ 11 Ex. A, Docket No. 71.)  Shukh also claims that he holds thirty-five U.S. and foreign patents, ten of which he patented while at Seagate.   Nine of his inventions have been incorporated into Seagate product lines of hard disk drives and related products.

In 1997, Seagate hired Shukh as Senior Advisory Development Engineer, and he signed a document titled "At-Will Employment and Invention Assignment Agreement." (Shukh Decl. ¶¶ 6, 9; Am. Compl. Ex. 1, Docket No. 7.)  The agreement provided that Shukh assigned to Seagate "all [his] right, title, and interest in and to any and all inventions . . . which [he] may solely or jointly conceive . . . during the period of time [he

is] in the employ of [Seagate]." (Am. Comp. Ex. 1 at 2.) At the time of his termination in 2009, his title was Development Principal Engineer.

The employment agreement also contained confidentiality provisions providing in part that Shukh

> [agrees to,] at all times during . . . employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company . . . any Confidential Information of the Company. . . . "Confidential Information" means any Company proprietary information, technical data . . . disclosed to me by the Company, either directly or indirectly . . . .

(Am. Compl. Ex. 1.) Further, the agreement provided that at the "time of leaving the employ of the Company, [Shukh] will deliver to the company (and will not keep in [his] possession, recreate or deliver to anyone else) any and all devices, records, notes, [etc.] developed by [him] pursuant to [his] employment with the Company or otherwise belonging to the Company . . . ." (*Id.*)

On August 30, 2007, Shukh complained to Ken Massaroni, Seagate's then-Vice-President of Intellectual Property and Chief Intellectual Property Counsel, about his omission as an inventor on an issued patent and a patent application submitted to the Patent and Trademark Office ("PTO"). (Shukh Decl. ("Shukh Decl. 13th Claim") Ex. A6, Docket No. 81.) Massaroni responded that an attorney met with individuals identified as inventors of the patents Shukh referenced, and that none of those individuals identified Shukh as contributing to the inventions. (*Id.*) Believing that he was fraudulently omitted as an inventor on various applications, Shukh "gathered evidence of that fraud" from Seagate's internal information sources that he claims he was fully authorized to access.

In early 2008, Shukh consulted with attorneys about the potential for litigation related to his omission as an inventor from the patent and patent application.

On January 14, 2009, Shukh was notified by Karen Hason, Seagate LLC's Senior Vice President of Human Resources that he was being terminated, effective March 16, 2009, due to the recent economic downturn.   When presented with the termination documents, Shukh says he told Ken Allen, Seagate's Vice-President of Transducer Development, that he would not sign because he was going to contact attorneys about his rights.   Allen stated, and Shukh did not deny, that beginning on January 15, 2009, Shukh copied a large number of documents, including his engineering log book.   He also made copies of documents related to his innovative activity at Seagate.

## II.    SHUKH'S INVENTIONS

On May 8, 2003, Shukh submitted an invention disclosure to Seagate's intellectual property ("IP") department entitled "Magnetic Head for Perpendicular Recording with Reduced Sidetrack Erasure," internally identified as STL 11473.00.   (Shukh Decl. Ex. A2.)   Shukh's engineering log book entries for May 5 and 6, 2003, witnessed and signed by two other Seagate engineers, show his completed conception of that invention. (*Id.* Ex. A3.)

The invention disclosure and log book disclosures propose a solution to the problem of side-track erasure in hard drives arising from the fact that as information was written to one recording track on a hard drive, previously recorded information on

adjacent tracks could be erased.  (*Id*. Exs. A2-3.)  The inventive concept included the use of a

> main pole, a magnetic yoke positioned adjacent to the main pole, two antiferromagnetically biased return poles positioned on the opposite sides of the main pole, back vias positioned between the main pole and the return poles, a coil positioned in a gap formed by the main pole and the return poles and between an air bearing surface and the back vias, wherein the main pole, yoke, and back vias have an elliptical shape to reduce the erasure of data on the media.

(Shukh Decl. ¶ 22.)   On or about June 16, 2003, Shukh submitted another Employee Patent Disclosure Form for his earlier invention, titled "Stable Magnetic Shield for High Density Recording Head," internally identified as STL 11547.00.  (*Id*. Ex. A4.)  The form related to an inventive refinement that the "magnetic reader shield received ellipse-like or circle-like shape and laminated structure formed by alternative ferromagnetic and non-magnetic layers with antiferromagnetic exchange coupling implemented between adjacent ferromagnetic layers."  (*Id.* ¶¶ 33-34.)

On August 18, 2003, Anne Johnson, a representative of the IP department sent two emails to Shukh about his inventions, informing him that the "Head Patent Review Board" decided not to pursue the inventions, but would combine them with "STL 11583.00."  (*Id.* Exs. A5-6.)  Later that day, Johnson emailed Shukh again and said "The Head Patent Review Board met and have decided to pursue this [STL 11583.00] invention, you will be contacted by an attorney in due course to prepare a utility application."  (*Id.* Ex. A7.)

III.    **DISPUTED PATENTS**

This dispute involves the following issued patents which Shukh claims he invented or co-invented:

- U.S. Pat. No. 7,233,457
- U.S. Pat. No. 7,684,150
- U.S. Pat. No. 6,525,902
- U.S. Pat. No. 6,738,236

The motions raised by the parties largely deal with the '457 and '150 patents. Shukh also makes claims in the amended complaint related to five pending applications for patents.  (Am. Compl. ¶ 196.)

On July 9, 2003, before Anne Johnson sent emails to Shukh, Seagate filed a provisional patent application titled "Perpendicular Recording Writer Design for Side Erasure Solution."  (Shukh Decl. A8.)  The provisional application named ten inventors, but not Shukh.  The provisional application was based in part on results of work from various Seagate employees, including Shukh, that were summarized in a presentation entitled "Perpendicular writer design proposal," which was posted on Seagate's Advanced Transducer Database by Taras G. Pokhil, on January 22, 2003.

On June 30, 2004, Seagate filed a utility patent application that claimed priority to the July 9, 2003 provisional application and named the same ten inventors as listed on the provisional application.  (*Id.* Ex. A12.)  The utility patent application did not list Shukh as an inventor.  The application was titled "Recording Head for Reducing Side Track Erasure," the same title of the invention disclosure internally identified by Seagate as STL 11583.00, into which Shukh had been informed his disclosures STL 11473.00 and

STL 11547.00 had been combined.   The utility application issued as U.S. Patent No. 7,684,150 (the "'150 Patent") on March 23, 2010.   (*Id.* Ex. A1.)  The '150 Patent shows that Seagate LLC is the Assignee.

On November 4, 2004, Shukh was notified by email that he had been awarded an inventorship award pursuant to Seagate's Policy on Inventor Recognition for the invention in his two disclosures which had been combined into STL 11583.00.   On June 30, 2004, Shukh also received a certificate from Seagate for his technological achievement for his contribution to the invention "Recording Head for Reducing Sidetrack Erasures."

Seagate's internal patent docketing system disclosed that he was a co-inventor of the invention that was the subject of the '150 Patent.  (*Id.* Ex. A10.)  Shukh claims he did not learn of his omission as an inventor on the application until approximately the fall of 2006.

Shukh claims he substantially contributed to the "Summary of the Invention" and to the concepts of Claims 1-5, 7, 9, 10-12, and 15 of the '150 Patent.

## IV.   EEOC CHARGES AND SUBSEQUENT ALLEGEDLY RETALIATORY CONDUCT

On March 17, 2009, the day after Shukh's termination took effect, Shukh filed charges of national origin discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Minnesota Department of Human Rights.   On May 18, 2009, Seagate filed a response to the charges.   On May 26, 2009, Seagate's Chief IP Counsel, William Zahrt, sent Shukh a letter stating in part:

> If you have any confidential information in your possession, including any
> data on portable storage devices, it must be returned to Seagate.  Retention
> of any confidential information beyond your separation date . . . may be
> considered a violation of your employment agreement . . . .

(Shukh Decl. Ex. A16.)   Further, on March 26, 2010, Chad Drown, one of Seagate's outside counsel, sent Shukh a letter citing the Confidentiality and Return of Documents provisions of Shukh's employment agreement and demanded the return of all material in Shukh's possession.  (Gekas Decl. Ex. B5, Docket No. 81.)

Shukh alleges that though extremely well-qualified for positions he applied for when he began looking for a new job, including at Seagate in response to various posted vacancies, he was not hired.  (Am. Compl. ¶¶ 259-262.)  Shukh charges that this indicates he was "black-listed" by Seagate, in retaliation for filing the EEOC and Minnesota Human Rights Act ("MHRA") charges.

## ANALYSIS

## I.   SEAGATE'S MOTION TO DISMISS

### A.   Standard of Review[1]

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.  *See, e.g.*, *Bhd. of Maint. of Way Emps. v.*

---

[1] The motions at issue are, variously, to dismiss and for summary judgment.  Because the majority of the arguments are brought under Rule 12(b)(6), that rule is set forth as the overarching standard by which the motions were evaluated.  The Court has noted and set forth the standard for summary judgment where appropriate below.

*Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001) (per curiam).  To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore, must be dismissed.  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## B.    Claim Two: Correction of Inventorship

Seagate challenges Shukh's standing to correct inventorship under Rule 12(b)(1), and Shukh moved for summary judgment on inventorship.

### 1.    Standing to Correct Inventorship

Though Seagate's motion was brought generally under Rule 12(b)(6) for failure to state a claim, Seagate also challenges Shukh's subject matter jurisdiction under Rule 12(b)(1), which requires the Court to examine whether it has authority to decide the claims.  *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008).  A party invoking federal subject matter jurisdiction has the burden of proving by a preponderance

of the evidence that jurisdiction exists.  *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).  In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to a consideration of the face of the complaint, but may also consider evidence submitted by the parties if the essence of the motion is a factual attack.  *Gilmore v. Nw. Airlines, Inc.*, 504 F. Supp. 2d 649, 653 (D. Minn. 2007).

Seagate asserts that Shukh does not have standing under 35 U.S.C. § 256 ("the Patent Act") to correct inventorship of U.S. Patent Nos. 7,684,150, 7,233,457, 6,525,902, 6,548,114, and 6,738,236, because the employment agreement created an automatic assignment of all right, title, and interests in any invention Shukh created during his employment, thus: (1) Shukh has no ownership interest in anything he invented at Seagate; (2) he has no financial interest in anything he invented at Seagate; and (3) reputational interests cannot be a basis for standing.

The Patent Act expressly provides a private right of action to correct inventorship:

> Whenever through error . . . an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may . . . issue a certificate correcting such error. . . .  The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned . . . .

35 U.S.C. § 256.

Though Shukh has brought a variety of state law claims, "[b]ecause inventorship is a unique question of patent law, the cause of action arises under § 1338(a)."  28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . .  Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases."); *see Christianson v. Colt Indus. Operating*

- 10 -

*Corp.*, 486 U.S. 800, 809 (1988) (holding that § 1338(a) jurisdiction extends to a cause of action in which "patent law is a necessary element"); *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010).  The Federal Circuit "expressly hold[s] that . . . [o]nce a patent issues, . . . 35 U.S.C. § 256 provides a private right of action to challenge inventorship . . . ."  *HIF Bio, Inc.*, 600 F.3d at 1354 (citing *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1324-25 (Fed. Cir. 2009)).

Seagate argues that the employment agreement created an automatic assignment of all right, title, and interests in any invention Shukh created during his employment, thus he has no ownership or financial interest in any patent, and no standing.  For a plaintiff to have standing to correct inventorship, the plaintiff must allege facts sufficient to show an "ownership interest" or a "concrete financial interest" in the patent in question.  *Larson*, 569 F.3d at 1324-26.

Although state law governs the interpretation of contracts generally, the question of whether a patent assignment clause creates an automatic assignment, or merely an obligation to assign, is bound up with the question of standing in patent cases, thus it is treated as a matter of federal law.  *DDB Tech., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008).  The Federal Circuit has held that "whether an assignment of patent rights in an agreement . . . is automatic, requiring no further act on the part of the assignee, or merely a promise to assign depends on the contractual language."  *Id.* at 1290.  "If the contract expressly grants rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs by operation of law."  *Id.* (alterations and internal quotation marks omitted) (quoting

*Filmtec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991)).  "Contracts that merely obligate the inventor to grant rights in the future, by contrast, 'may vest the promisee with equitable rights in those inventions once made,' but do not by themselves 'vest legal title to patents on the inventions in the promise.'"  *Id.* (emphases omitted) (quoting *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1581 (Fed. Cir. 1991)).

Shukh's employment agreement provides: "I agree . . . and hereby assign to the Company . . . all my right, title, and interest in and to any and all inventions . . . ."  (Am. Compl. Ex. 1.)  The *DDB Techs* court interpreted almost identical present-tense language, finding that the assignment was automatic.  *DDB Techs.*, 517 F.3d at 1287 ("Employee agrees to and does hereby grant and assign . . . .").  Taking the facts in a light most favorable to either party (Shukh on the motion to dismiss, and Seagate on the motion for summary judgment), there is no path to arrive at the conclusion that the parties have co-ownership of the patent: Seagate is the sole owner.

The employment agreement further provides that:

> [Shukh] agree[s] to assist the Company . . . to secure the Company's rights in the Inventions . . . including . . . the execution of all applications, specifications, oaths [and] assignments . . . which the Company shall deem necessary . . .

(Am. Compl. Ex. 1.)  The *DDB Techs* court also evaluated nearly identical language in an employment contract, holding "we see nothing in this clause that conflicts with the clear language of the present, automatic assignment provision in the agreement."  *DDB Techs.*, 517 F.3d at 1290 n.3 ("Employee agrees to execute specific assignments and do anything else properly requested by company . . . to secure such rights.").  As a result, the Court

finds the provisions of the employment agreement created an automatic assignment of rights because that language of the employment agreement does not conflict with the present, automatic assignment provision, thus Shukh cannot derive standing from ownership of the patents.

Financial interests can also convey standing to challenge inventorship.   "[A]n expectation of ownership of a patent is not a prerequisite for a putative inventor to possess standing to sue to correct inventorship under § 256.   The statute imposes no requirement of potential ownership in the patent on those seeking to invoke it."   *Larson*, 569 F.3d at 1326 (quoting *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1358 (Fed. Cir. 2001)). In *Chou*, the Federal Circuit found that "concrete financial interests" in the patents, due to the inventor's relationship with the university, were enough to satisfy standing under Article III.  *Chou*, 254 F.3d at 1355.

In contrast to *Chou*, *Larson* involved a situation similar to Shukh's, in that Larson "assigned away all of his patent rights [to defendants]."   569 F.3d at 1321.   Larson's "only path to financial reward  . . . involves him . . . obtaining rescission of the patent assignments."  *Id.* at 1326–27.  The court held that

> [w]ithout first voiding his patent assignments, Larson has no ownership interest in the . . . patents. . . .   Larson's financial stake in the patents is contingent on him obtaining relief that a federal court has no jurisdiction . . . to provide.   Because [he] lacks an ownership interest, and because being declared the sole inventor will not generate any other direct financial rewards . . . Larson has no constitutional standing to sue for correction of inventorship in federal court.

*Id.* at 1327.   Here again, the facts in a light most favorable to Shukh provide no possibility that he could have a financial interest in any of the patents at issue.

- 13 -

Finally, in *Larson*, the Federal Circuit discussed, but declined to hold, whether a reputational interest alone was enough to confer standing.  The court noted that it was "not implausible" for reputational interests to confer standing, as it had previously held in *Chou*, but did not expressly analyze the issue.  *Id.*; *Chou*, 254 F.3d at 1359 ("[B]eing considered an inventor of important subject matter is a mark of success in one's field, comparable to being an author of an important scientific paper.  **Pecuniary consequences may well flow from being designated as an inventor**." (emphasis added)).  Shukh argues that reputational interests should give him standing, and that he has adequately alleged such damage.   For instance, in the amended complaint Shukh alleges that he is "one of the world's leading scientists and engineers in the area of computer hard disk drives."  (Am. Compl. ¶ 1.)  Further, he claims that "[d]uring and after Dr. Shukh's employment at Seagate, his inventions were incorporated into several hundred millions (probably closer to 1.1 billion) of product units sold by Seagate."  (*Id.* ¶ 2.)

It is clear that a failure to be designated as an inventor of a patent that is widely known in an industry is an important mark of success, and in the Court's view, *Chou* is correct that pecuniary and reputational consequences could easily flow from being named or omitted as an inventor.  Further, Shukh alleges that he has had difficulty finding new employment, and while he attributes some of this to "black-listing" and rumors instigated by Seagate, it is also logical that omission from important patents could affect his ability to get a new job.

Thus, the Court finds Shukh has standing to challenge inventorship under 35 U.S.C. § 256 due to potential harm to his reputational interests and Seagate's motion to dismiss Claim Two for failure to state a claim is denied.

**2.      Shukh's Motion on Inventorship**

Shukh also brought a motion for summary judgment on the issue of inventorship. A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Shukh has not demonstrated that there are no genuine issues of material fact that he contributed to the inventions embodied in the patents he challenges.  Specifically, although he provides a large number of documents detailing his work, without expert testimony describing exactly how his work was incorporated into each claimed invention, the Court cannot simply compare his work to a different product and know to what extent his work was a part.  Further, there is insufficient evidence demonstrating that Shukh's work was not predicated on the work of anyone else, and that he was in fact inventing, or contributing to a new invention.  Overall, while Shukh has demonstrated standing to correct inventorship, and has alleged sufficient facts to overcome a motion to dismiss, he

has fallen well short of the standard required to be granted summary judgment on the issue of inventorship.  Thus the Court denies Shukh's motion for summary judgment on Claim Two.

### C.      Claims Three and Four: Rescission and Breach of Contract

Claims Three and Four of the amended complaint both relate to an alleged breach of Shukh's employment agreement by Seagate's failure to protect and recognize his inventorship rights.

Seagate first argues that Shukh has failed to state a claim for breach of contract. *See* Fed. R. Civ. P. 12(b)(6).  The amended complaint alleges that Seagate breached the employment agreement by "failing and refusing to protect Dr. Shukh's inventorship rights and by refusing to recognize his inventorship rights, and by interfering with his inventorship rights."  (Am. Compl. ¶ 292.)  Shukh acknowledges that he has not alleged Seagate expressly agreed to protect his inventorship rights.  Instead, Shukh argues that the obligations of 35 U.S.C. §§ 111, 115, and 116 (provisions of the Patent Act) are incorporated into the employment agreement impliedly and by Minnesota law, including the implied covenant of good faith and fair dealing.

 Incorporation by reference is a matter of law.  *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1343 (Fed. Cir. 2008).  "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents identified."  *Id.* at 1344 (alternations and internal quotation marks omitted).

The employment agreement is governed by Minnesota law pursuant to its choice-of-law provision, which Minnesota traditionally enforces.  (Am. Compl. Ex. 1); *Hagstrom v. Am. Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994).  "[W]hen a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction."  *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004).

The employment agreement nowhere states, or even implies, that the Patent Act's obligations will be incorporated into the agreement, nor that a private right of action exists under the patent laws for the breach of contract Shukh alleges.  The employment agreement states:

> I agree to assist the Company . . . at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents . . . relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications . . . and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the company . . . the sole and exclusive rights, title and interest in and to such Inventions . . . .

(Am. Compl. Ex. 1. at 3.)  Though §§ 111, 115, and 116 of the Patent Act include similar language to the employment agreement provision, the Court finds nothing in the employment agreement suggesting that it expects any, much less all, of the Patent Act to be incorporated by reference.

Next, Seagate argues that Shukh has failed to state a claim for breach because the patent laws and regulations are not implied through the covenant of good faith and fair dealing.  "Minnesota does not recognize an implied duty of good faith and fair dealing in

employment contracts." *Brozo v. Oracle Corp.*, 324 F.3d 661, 668 (8th Cir. 2003); *see Hunt v. IBM Mid. Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986) ("[W]e have not read an implied covenant of good faith and fair dealing into employment contracts."). Shukh has not cited any authority suggesting that a contract can be read in separate parts, such that a portion of the agreement governing inventions and the parties' rights regarding those inventions are considered not related to employment and can thus be sheltered from the rule that Minnesota does not imply good faith and fair dealing into employment contracts. Further, the employment agreement's first paragraph states "[i]n consideration of my employment with the Company . . . I agree to the following: . . ." (Am. Comp. Ex. 1.) This language suggests that the entire document is an employment agreement, and the various provisions are specifically written as obligations of, and related to, employment.

Further, the amended complaint does not suggest Seagate frustrated or hindered Shukh's performance under the employment agreement, which is what the implied covenant prohibits. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995).

The Court grants Seagate's motion to dismiss Claim Three, as Shukh has not alleged sufficient facts to state a claim for breach of contract. Because Seagate did not breach the contract, any arguments that the agreement could be rescinded, or was ratified

at a time it could be rescinded, are moot.  Thus, Seagate's motion to dismiss Count Four for rescission is also granted.

### D.     Claim Five:  Fraud

In Minnesota, a claim for fraud requires:

> [A] false representation regarding a past or present fact, the fact was material and susceptible of knowledge, the representer knew it was false or asserted it as his or her own knowledge without knowing whether it was true or false, the representer intended to induce the claimant to act or justify the claimant in acting, the claimant was induced to act or justified in acting in reliance on the representation, the claimant suffered damages, and the representation was the proximate cause of the damages.

*Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).   Seagate argues that Shukh has failed to plead reliance and damages, and has otherwise failed to support his claims of fraud.  Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .").   A review of the complaint in the light most favorable to Shukh suggests that the complaint may allege that it was a material misrepresentation for Seagate to file various patent applications omitting Shukh as an inventor.  It additionally could be a material misrepresentation because according to the complaint and various emails, Shukh was informed that his inventions STL 11473.00 and 11547.00 were to be incorporated into STL 11583.00, but he was not listed as an inventor in the final patent application, thus Seagate acknowledged a role for his inventions in the patent, but failed to credit them.  (Am. Compl. ¶¶ 124-131.)

Further, it can be inferred from the complaint that Shukh relied on Seagate's "representations" to protect his inventorship rights, that is, the actions of its IP department in receiving and applying for patents, and that he was damaged by doing so. (Am. Compl. ¶ 297) ("Seagate . . . knew that Dr. Shukh was relying on their candor and honesty to protect his inventorship rights and they further knew he was acting on the presumption that Seagate . . . would not interfere [with] his inventorship rights . . . .").

Although Shukh has not alleged specific damages except as to his reputation, and various inventorship rights that are in dispute, because the Court finds standing predicated at least in part on Shukh's allegation that his reputational interests were harmed, the Court also finds that Shukh has alleged sufficient facts to overcome a motion to dismiss for failure to state a claim of fraud, and denies Seagate's motion to dismiss Claim Five.

### E.    Claim Six:  Fiduciary Duty

Minnesota recognizes two types of fiduciary relationships, *per se* and *de facto*. *Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2001).  Shukh does not claim that a fiduciary relationship and duty arises from the employment agreement, thus the only relevant analysis is under a *de facto* fiduciary relationship and duty.

A fiduciary relationship may arise "when one person trusts and confides in another who has superior knowledge and authority." *Id.*  However, the Minnesota Supreme Court "has concluded that a fiduciary relationship cannot arise even out of a long, close, and

trusting relationship when the purportedly trusting party 'should have known the [other party] was representing adverse interests.'" *Id.* at 602 (alteration in original).

Shukh relies heavily on *Chou* to suggest that a fiduciary duty existed between Seagate and Shukh.  254 F.3d at 1347.  In *Chou*, a former graduate student sued her professor, university, and patent licensee and assignee seeking correction of inventorship, and alleging, among other claims, a breach of fiduciary duty.  The court found that a fiduciary duty existed when Chou's professor had a position of superiority over her, and had specifically represented to her that he would protect and giver her proper credit for her inventions.  *Id.* at 1362-63.  Thus, Chou "adequately pleaded the existence of circumstances that place on [the professor] a fiduciary duty . . . ."  *Id.*  Unlike *Chou*, Shukh has not alleged that Seagate explicitly or implicitly represented that it would protect his rights and give him proper credit for his inventions.  Though Seagate is bound to abide by the Patent Act, Shukh has pointed to no provision of the Act suggesting that filing a patent to which Shukh contributed creates a fiduciary relationship between the inventor and assignee.

Seagate also suggests that assuming a fiduciary relationship existed, there was still no duty for Seagate to perfect and protect Shukh's "legally cognizable inventorship rights."  Even reading the complaint in a light most favorable to Shukh, Seagate does not have any obligation to protect his inventorship rights, nor is it clear that he has inventorship rights once his work has been assigned to Seagate.  Thus, the Court finds Seagate had no duty to protect Shukh's inventorship rights beyond properly naming him as an inventor, and grants Seagate's motion to dismiss Claim Six.

**F.      Claim Seven:  Unjust Enrichment**

Shukh's claim for unjust enrichment alleges that Seagate failed to perfect his inventorship and thus wrongfully reaped the benefits of his inventions.  (Am. Comp. ¶ 305.)  To establish a claim for unjust enrichment, a party must show that another party knowingly received something of value to which he was not entitled.  *Mon-Ray Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 440 (Minn. Ct. App. 2004).  "Unjustly" could mean "unfairly" or "illegally."  *Id.*  "Minnesota does not allow recovery under an unjust enrichment theory when there is an express contract which governs the parties' relations."  *Nw. Airlines, Inc. v. Astraea Aviation Servs.*, Inc., 111 F.3d 1386, 1392 n.4 (8th Cir. 1997) (citing *Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984)).  However, "where there has been such a breach of a contract by one party that the other may choose to rescind and recover in quasi-contract," recovery on the theory of quasi-contract is permitted.  *Roberge v. Cambridge Co-op. Creamery*, 79 N.W.2d 142, 150 (Minn. 1956).

The complaint states "the circumstances render it inequitable for [Seagate] to retain the benefit [of his inventorship] without paying for it   .  .  . either in the disgorgement of profits or payment of a fair license fee."  (Am. Compl. ¶ 305.)  As discussed earlier, by its terms, Shukh's employment agreement provides **no** right to profits, or licensing fees for inventions.  Instead, Shukh was paid a salary and agreed to assign all of his inventions, and his rights to those inventions, to Seagate.  There can be no claim for unjust enrichment.  Further, because the Court has determined that Shukh

has not adequately pled a claim for breach of the employment agreement, Shukh cannot base a claim for unjust enrichment on a theory of recovery in quasi-contract. *See Roberge*, 79 N.W.2d at 150. Though Shukh's standing is derivative of harm to his reputational interests, unlike *Chou*, and similar to *Larson*, there are simply no expectations or promises of financial gain anticipated by the employment agreement, thus the Court grants Seagate's motion to dismiss Claim Seven.

### G.      Claim Eight:  Interference with Business Expectancy

A claim for tortious interference with prospective economic advantage under Minnesota law must allege:

> (1) the existence of a reasonable expectation of economic advantage or benefits belonging to the plaintiff; (2) that Defendants had knowledge of that expectation of economic advantage; (3) that Defendants wrongfully and without justification interfered with Plaintiffs' reasonable expectation of economic advantage or benefit; (4) that in the absence of the wrongful acts of Defendants, it is reasonably probable that Plaintiffs would have realized their economic advantage or benefit; and (5) that Plaintiffs sustained damages as a result of this activity.

*Steinhauser v. City of St. Paul*, 595 F. Supp. 2d 987, 1019–20 (D. Minn. 2008) (citing *Harbor Broad., Inc. v. Boundary Waters Broad, Inc.*, 636 N.W.2d 560, 569 (Minn. Ct. App. 2001)) *partially reversed on other grounds*.

Shukh does not allege what business expectancy was interfered with, that Seagate knew about such expectancy, why it is probable he would have realized such expectancy, or specific damages resulting from Seagate's actions.   Thus, there was no realistic expectation of economic benefit that Seagate could have violated.  Shukh's employment agreement clearly assigned all rights, title, and interest in his inventions to Seagate, with

no expectation that he would receive compensation other than his salary.   The Court

grants Seagate's motion to dismiss Claim Eight.

### H.    Claims Nine and Ten:   Title VII and State Law National Origin Discrimination

Shukh's ninth and tenth claims for relief allege national origin discrimination

under Title VII and the Minnesota Human Rights Act ("MHRA").  42 U.S.C. § 2000e-

2(a)(1); Minn. Stat. § 363A.08.  Shukh argues that he need not plead discrimination with

greater than usual particularity, and that an employment discrimination claim need not

contain specific facts establishing a prima facie case of discrimination.   The Supreme

Court

> has never indicated that the requirements for establishing a prima facie case
> under *McDonnell Douglas* also apply to the pleading standard that plaintiffs
> must satisfy in order to survive a motion to dismiss. . . .  [The Court has
> rejected]  the  argument  that  a  Title  VII  complaint  requires  greater
> particularity,  because  this  would  too  narrowly  constrict  the  role  of  the
> pleadings.

*Swierkiewicz  v.  Sorema  N.A.*,  534  U.S.  506,  511  (2002)  (alterations,  citations,  and

internal quotation marks omitted); *see also Twombly*, 550 U.S. at 570 (in the employment

discrimination context the Supreme Court does not "require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its face.").

As a result "[a]n employment discrimination plaintiff need only give the defendant 'fair

notice' of what the plaintiff's claims are and the grounds upon which they rest."  *Martin*

*v. Reliastar Life Ins. Co.*, 710 F. Supp. 2d 875, 887 (D. Minn. 2010).

In the amended complaint Shukh alleges that he was discriminated against based on national origin, and that the discrimination included disparate treatment in pay, promotions, and denial of recognition and inventorship.

Shukh's pleadings related to discrimination in pay, promotions, and failure to be recognized for achievements, consist of little more than bare statements that such events occurred.  However, taking the facts in a light most favorable to Shukh, and given that he was terminated despite being a very successful inventor and a member of the Seagate Inventor Hall of Fame, the pleadings are not so deficient they fail to state a claim that is plausible on its face.  *Martin*, 710 F. Supp. 2d at 888 ("Unlike their white coworkers, Plaintiffs claim that they received lower pay, had unequal access to promotion opportunities . . . and were refused overtime opportunities. These are not conclusory statements, but rather assertions of fact that put the Defendants on fair notice of the basis for this lawsuit."); *see also Swanson v. Citibank, N.A*, 614 F.3d 400, 405 (7th Cir. 2010) ("[The] complaint identifies the type of discrimination that [plaintiff] thinks occurs (racial), by whom . . . and when (in connection with [plaintiff's] effort in early 2009 to obtain a home-equity loan).  This is all that [plaintiff] needed to put in the complaint.").

Next, Seagate argues that Shukh's Title VII claim is time barred because to properly bring such a claim, a charge of discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice.[2]   42 U.S.C. § 2000e-

---

[2] If the charge had been filed **only** with the EEOC, then the time limits for filing would have been 180 days, however, because Shukh concurrently instituted proceedings with a state agency, the relevant limitations period is 300 days.  42 U.S.C. § 2000e-5(e)(1) ("[the period for

(Footnote continued on next page.)

5(e)(1).   A Minnesota Human Rights Act ("MHRA") claim must be filed with the Minnesota Department of Human Rights within one year after the alleged discriminatory conduct.   Minn. Stat. § 363A.28.   Shukh filed his charge of discrimination with both agencies on March 17, 2009.   (Am. Comp. § 244.)   Thus, if nothing tolls the time limitations, Shukh may only pursue claims for discrimination under Title VII that occurred from May 21, 2008-March 17, 2009, and under the MHRA from March 17, 2008-March 17, 2009.   Seagate argues that if the discriminatory activity is defined as filing patents without including Shukh as an inventor, then they must be dismissed as beyond the statutory limitations period of Title VII and the MHRA.

"A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."   *Nat. R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 122 (2002); *Walsh v. Nat'l Computer Sys.*, 332 F.3d 1150, 1157 (8th Cir. 2003). Courts have allowed plaintiffs to bring claims well after the statutory limitation period has passed when the claim is for a "hostile work environment." *Morgan*, 536 U.S. at 122; *Mems v. City of St. Paul, Dept. of Fire and Safety Servs.*, 327 F.3d 771, 785 (8th Cir. 2003).   Though Shukh has not explicitly alleged that his work

_____

(Footnote continued.)

filing a charge under this section is 180 days except] in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.").

environment was "hostile," a plain reading of the complaint suggests that it is, in essence, what he claims.  Shukh alleges that the discrimination he faced at Seagate was ongoing and represented continuing violations, and that it was not limited only to a failure to be named on patents to which he contributed, but was also manifested through failures to be promoted and obtain increases in pay.  Further, Shukh argues that even if certain acts are outside the limitation period, they can be used as background evidence in support of a timely claim.

Viewing the complaint in a light most favorable to Shukh, he has sufficiently alleged continued violations of state and federal law, tolling the relevant statutes of limitations.  The Court thus denies Seagate's motion to dismiss Claims Nine and Ten.

## I.       Claims Eleven and Twelve:  Retaliation

Shukh's claims for retaliation under Title VII and the MHRA relate to actions that occurred prior to, and after, he filed his discrimination charges on March 17, 2009.

Shukh's allegation of retaliation **before** he filed his EEOC and MHRA actions were that "Seagate retaliated against him for his complaints" about "an extreme pattern of discrimination against him, because of his national origin, and accent . . . ."  (Am. Compl. ¶¶ 229-30.)  The Court finds that Shukh adequately pled retaliation for pre-termination conduct based on allegations relating to his failure to be promoted, and to have his pay increased.

After filing his discrimination complaints, Shukh brought these claims, alleging that in retaliation for the EEOC and MHRA actions, Seagate or Seagate's counsel sent

him a letter reminding him of his obligations under the employment agreement to return documents to Seagate, sent Shukh's counsel a letter requesting return of the documents, refused to rehire Shukh for jobs to which he applied after being terminated, and spread rumors about Shukh preventing him from obtaining other employment.  (Am. Compl. ¶¶ 247-62.)  These claims were brought under the MHRA.  (*Id.*)  Unlike under Title VII, the MHRA does not require discrimination plaintiffs to exhaust their administrative remedies before bringing a lawsuit in a court.  Minn. Stat. § 363A.33 ("[A] person may bring a civil action seeking redress for an unfair discriminatory practice directly to district court.").  Shukh's MHRA claim did not need to be exhausted to be properly brought, and the post-EEOC-complaint retaliatory conduct claim was only brought under the MHRA, not Title VII, thus Seagate's exhaustion arguments are irrelevant.  (Am. Compl. ¶  258.)

Seagate argues that retaliation requires an adverse employment action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").  However, courts have held illegal employer retaliation can encompass materially adverse actions unrelated to plaintiff's employment.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 346 (1997) (negative employment reference of a former employee was a prohibited retaliatory material adverse action); *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3d Cir. 1994) (post-employment threat to a teacher's license who was pursuing Title VII discrimination

claims was a prohibited action subject to suit).  Shukh has alleged that statements and rumors from Seagate have affected his ability to be hired elsewhere and that he was not rehired for available positions at Seagate despite being well-qualified for them.  Taking these allegations as true, the Court finds that he has stated a claim for relief for retaliation that is plausible on its face.  As a result, the Court denies Seagate's motion to dismiss as to claims Eleven and Twelve.

**J.    Claim Thirteen: Declaratory Judgment Regarding Confidentiality Provisions**

Shukh sought and was granted leave to file an amended complaint (Docket No. 6), in which he added a claim seeking a declaratory judgment that provisions in the employment agreement requiring Shukh to return certain documents be declared unenforceable.  (Am. Compl. ¶ 327.)  Seagate moved to dismiss, and Shukh brought a motion for summary judgment on the claim.

Seagate argues that as a condition of his employment, Shukh agreed to maintain the confidentiality of Seagate's confidential information, and to return all of Seagate's property upon termination of his employment.  The relevant contract provision states:

> Returning Company Documents:  I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all . . . records, notes, [and] other documents . . . developed by me pursuant to my employment with the Company.

(Am. Compl. Ex. 1.)  Seagate notes that before being escorted from Seagate on March 16, 2009, Shukh took 49,607 documents, which the Magistrate Judge ordered be disclosed to Seagate.  (Hearing Tr. at 36:10-14, Sept. 28, 2010, Docket No. 64.)  Seagate argues that

Shukh has not asserted facts excusing him from compliance with the employment agreement.

Shukh alleges that during the course of his employment, and after "discovering Seagate's theft" of his ideas and inventions, he created and maintained his own records evidencing his work and inventorship.  (Am. Compl. ¶ 329.)  Claim Thirteen requests a declaration that Shukh need not comply with the document return provisions of the employment agreement.  As support for this claim, Shukh argues that Seagate's fraudulent omission of Shukh as an inventor and filing of allegedly false patent applications demonstrates unclean hands.  *Wind Turbine Indus. Corp. v. Jacobs Wind Elec. Co., Inc.*, No. 09-36, 2010 WL 4723385, at *12 (D. Minn. Nov. 16, 2010) ("The doctrine of unclean hands will be invoked only to deny equitable relief to a party whose conduct has been unconscionable by reason of a bad motive.").  Shukh then argues that the Court should not enforce a contractual provision, such as the document return provision, that is in violation of public policy.  The public policy Shukh is concerned with is Seagate's alleged violation of the Patent Act, which, Shukh argues, the Court should not condone.  Finally, Shukh argues that the contract is unconscionable.  To establish unconscionability, a party must demonstrate it had no meaningful choice but to deal with the other party and to accept the contract as offered.  *Sports and Travel Mktg., Inc. v. Chi. Cutlery Co.*, 811 F. Supp. 1372, 1380 (D. Minn. 1993).

Seagate argues that the provision is not unconscionable or against public policy because Shukh cannot violate a contractual duty not to take confidential materials simply

because he needs them to support his claims.   Seagate points to *JDS Uniphase Corp. v. Jennings*, in which the court said

> By no means can [public] policy fairly be said to authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law . . . .   Endorsing such theft or conversion would effectively invalidate most confidentiality agreements, as employees would feel free to haul away [documents] knowing they could later argue they needed the documents to pursue suits against employers . . . .

473 F. Supp. 2d 697, 702 (E.D. Va. 2007).   Additionally, Seagate argues that the disputed provision is routinely accepted by reasonable people, and suggests that hundreds of Seagate employees have accepted the provision, thus rendering it reasonable, and not unconscionable.

The Court finds no evidence of unconscionability, or bad faith, and finds that public policy does not militate in favor of issuing a declaratory judgment that the document return provisions of Shukh's employment agreement are unenforceable.   Thus, Seagate's motion to dismiss Claim Thirteen is granted, Shukh's motion for summary judgment is denied as moot.

## II.     MOTION FOR INJUNCTIVE RELIEF

Shukh also filed a motion for a mandatory injunction requiring Seagate to make disclosures Shukh alleges are mandated by the PTO's "Manual of Patent Examining Procedure" (MPEP"), and 37 C.F.R. § 1.56.   These provisions combine to require that the PTO be informed of litigation relating to pending or issued patents, by the applicants.   37 C.F.R. § 1.56; MPEP § 2001.06(c) ("Where the subject matter for which a patent is being

sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the [PTO].").

Shukh filed his original complaint on October 12, 2010, and alleges that after monitoring the "public File Wrappers" on the PTO's website, he found no indication that Seagate had disclosed the fact of the litigation as it related to the five patents at issue in this case. Shukh wrote to Seagate asking whether it had informed the PTO and other co-inventors about the litigation. On October 29, 2010, Seagate filed a "Notice of Information from Related Litigation" with the PTO, disclosing the existence of this litigation and Shukh's claims of inventorship for each pending Seagate patent application. (Drown Decl. Exs. 1-5, Docket No. 102.)

Seagate argues that this Court does not have the power to order the requested relief. The Federal Circuit has previously found that a district court exceeded its authority when it ordered parties to disclose information to the PTO in the context of a reexamination proceeding. *Emerson Elec. Co. v. Davoil, Inc.*, 88 F.3d 1051, 1054 (Fed. Cir. 1996); *see also In re Cont'l Gen. Tire, Inc.*, 81 F.3d 1089, 1093 (Fed. Cir. 1996) (compelling a district court to vacate an order requiring an alleged infringer in a patent suit to file a request for reexamination with the PTO). In *Emerson*, the Federal Circuit said that the district court is "not authorize[d] . . . to direct that [plaintiff] must include [defendant's] documents in its filings in the [PTO] in the reexamination proceedings." *Emerson Elec. Co.,* 88 F.3d at 1054. Shukh has not cited **any** case supporting the idea that this Court has the authority to issue a writ mandating that a litigant file something with the PTO in the context of patent litigation and other litigation related thereto.

- 32 -

Seagate also argues that its filing of five "Notice[s] of Information from Related Litigation" renders the subject of this motion moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (alteration in original) (internal quotation marks omitted)).

Seagate's disclosures include the following language:

> Alexander M. Shukh filed a lawsuit in United States District Court . . . asserting claims for . . . Correction of Inventorship . . . Fraud and Fraudulent Concealment, Breach of Fiduciary Duty, Unjust Enrichment . . . .

(Drown Decl. Exs. 1-5.)  Tellingly, Shukh has not cited **any** case setting forth a standard of materiality, or describing what specific information would meet the requirements he alleges must be met.  Shukh has failed to detail the deficiencies in Seagate's attempt to comply with his request, and has not suggested what Seagate should have done.  Further, Shukh has failed to identify what he wants the Court to order Seagate to do, unless it is to turn over all documents relating to this litigation, Shukh's employment with Seagate, and any other peripherally related materials, to the PTO.   Though Seagate **could** have filed more documents with the PTO, it has not breached any identified rule or law requiring more.   Even if the Court has the authority to require Seagate to provide additional documents to the PTO, which is uncertain at best, it will not issue such an order because Seagate has rendered the issue moot by disclosing the litigation to the PTO.

# ORDER

Based upon all the files, records and proceedings herein **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Dismiss the Amended Complaint [Docket No. 14] is **GRANTED in part** and **DENIED in part** as follows:

      a.      The motion is **GRANTED** as to Claims Three, Four, Six, Seven, Eight, and Thirteen and those claims are **DISMISSED with prejudice**.

      b.      The motion is **DENIED** in all other respects.

2.      Plaintiff's Motion for Partial Summary Judgment on His Second Claim for Relief [Docket No. 57] is **DENIED.**

3.      Plaintiff's Motion for Partial Summary Judgment on Plaintiff's Thirteenth Claim for Relief For a Declaratory Judgment Regarding the Unenforceability of The Confidentiality and Document Return Provisions of His Employment Agreement [Docket No. 78] is **DENIED as moot**.

4.      Plaintiff's Motion for a Preliminary Injunction [Docket No. 65] is **DENIED.**

DATED:  March 30, 2011                              s/ John R. Tunheim
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                       United States District Judge