## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **ALEXANDER M. SHUKH**, <br><br> Plaintiff, <br><br> vs. <br><br> **SEAGATE TECHNOLOGY LLC, SEAGATE TECHNOLOGY, INC., SEAGATE TECHNOLOGY, SEAGATE TECHNOLOGY PLC, and UNKNOWN OWNERS AND ASSIGNEES,** <br><br> Defendants. | Civil No. 10-CV-404 (JRT/JJK) |
| **SEAGATE TECHNOLOGY LLC and SEAGATE TECHNOLOGY**, <br><br> Counterclaimants, <br><br> vs. <br><br> **ALEXANDER M. SHUKH** <br><br> Counterclaim Defendant. | |

## SEAGATE'S BRIEF IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER

## INTRODUCTION

Early in this case, this Court made its disapproval of abusive discovery very clear:

> **"[A]s a court, we have to be strict about letting discovery get out of hand.
> And I am not going to permit unbridled discovery."**

(Wright Decl. Ex. A at 41:19-21.)

Despite the Court's warning, "unbridled" and "out of hand" discovery is precisely what Shukh has engaged in for the past four weeks. Shukh has served 13 third-party subpoenas in 5 different districts on Seagate's technical expert, Christopher Bajorek, Ph. D.; on Seagate's rehabilitation expert, Angela Heitzman; on two of Dr. Bajorek's former employers; on a law firm that previously retained Ms. Heitzman in an unrelated case; on the American Arbitration Association ("AAA"); and on the International Association of Rehabilitation Professionals ("IARP"). Shukh's third-party subpoenas seek broad categories of irrelevant information, including:

- documents from unrelated lawsuits in which Dr. Bajorek and Ms. Heitzman opined (the vast majority of which are subject to other courts' protective orders), including the "***entire case file***" from a still-pending and highly sensitive trade secret arbitration;

- confidential settlement documents from a dispute between Dr. Bajorek and IBM over the exercise of stock options in 1996; and

- "all personnel files" of Dr. Bajorek from one of his former employers.

In addition, Shukh has served a Rule 34 request on Seagate seeking "***all . . . reports***" rendered and transcripts of "***any testimony***" by Dr. Bajorek "***at any time***," including in two lawsuits entirely unrelated to this action.

1

The subject matter of Shukh's written expert discovery is irrelevant to his claims of inventorship, fraud, and employment discrimination.  And even if any of the requested documents were relevant, the likely benefit of the discovery is outweighed by the burden and expense of responding to the discovery.  Worse yet, many of Shukh's requests, such as the requests regarding the IBM cases and the request for Dr. Bajorek's Intematix personnel files, are solely for the purpose of harassing  and embarrassing Dr. Bajorek.

In sum, Shukh's written expert discovery is entirely out of hand.  This Court clearly has the power to manage the discovery permitted in a case before it, including the type of discovery permitted during the expert discovery period of the Court's Scheduling Order.  Seagate therefore respectfully requests a protective order pursuant to Rules 16(a), 26(b)(2)(C), and 26(c) ordering Shukh to withdraw the subpoenas to IBM, Intematix, Dr. Bajorek, Ms. Heitzman, and the AAA, and precluding Shukh from serving additional written discovery absent leave of Court.  In the alternative, Shukh should be required to pay Dr. Bajorek and Ms. Heitzman for their time (at their standard expert hourly rate) and costs incurred in responding to Shukh's subpoenas.

## BACKGROUND

### I.     Shukh Is Engaging in Unbridled Expert Discovery.

Since mid-December, Shukh has engaged in a burdensome course of expert discovery directed to irrelevant subjects that serves no purpose other than to annoy and embarrass Seagate's experts and unduly burden those experts and Seagate.  Although Seagate is not moving for a protective order as to every subpoena served by Shukh,

Seagate describes Shukh's discovery below so the Court is aware of the full extent of Shukh's conduct.

### A.      Shukh's Discovery Relating to Dr. Bajorek.

Seagate's technical expert, Dr. Bajorek, is the primary target of Shukh's improper discovery.  Dr. Bajorek submitted a rebuttal expert report in which he provided opinions on inventorship issues and on Shukh's technical expert's inventorship opinions.  (Bajorek Decl. ¶ 1.)  Rather than focusing on the substance of Dr. Bajorek's opinions during expert discovery, Shukh has chosen to seek irrelevant and intrusive discovery into Dr. Bajorek's employment history and opinions in cases unrelated to this case.

First, on December 17, 2012, Shukh issued a subpoena to IBM, Dr. Bajorek's former employer, seeking "all publicly-filed documents" relating to a dispute between IBM and Dr. Bajorek about Dr. Bajorek's exercise of stock options in 1996 ("IBM cases") and "all documents" relating to the confidential settlement of the IBM cases[1]:

1. Any and all publicly filed documents, ESI and/or other things relating or pertaining in any way to the following lawsuits between [IBM] and Dr. Christopher H. Bajorek:

   a. *IBM v. Bajorek*, Case No. 97-cv-20204-RMW (N.D. CA.) (San Jose); and/or

   b. *Bajorek v. IBM*, Case No. 96-cv-20806-RMW (N.D. CA) (San Jose).

2. Any and all documents, ESI, and/or other things relating or pertaining in any way to the disposition or settlement of either or both of those case [sic], including any documents showing any payments made by Dr. Bajorek to IBM or vice versa.

---

[1] Although Seagate accepted service on behalf of Dr. Bajorek and Ms. Heitzman, Seagate has not received any proof of service from Shukh regarding the other third parties.

(Wright Decl. Ex. B; *see* Bajorek Decl. ¶ 19.)  This discovery is directed to nothing but irrelevant subjects, as cases involving Dr. Bajorek's exercise of stock options over 15 years ago have no relevance to Shukh's inventorship, fraud, and discrimination claims. (Bajorek Decl. ¶¶ 19-20; *see* Am. Compl. ¶¶ 276-280, 295-298, 311-326.)

On December 18, 2012, Shukh issued a subpoena to another of Dr. Bajorek's former employers, Intematix, seeking "all" of Dr. Bajorek's personnel files:

> All documents, ESI and/or other things relating or pertaining in any way to any and all personnel files of Dr. Christopher H. Bajorek, including anything related or pertaining in any way whatsoever to his hiring and/or termination.

(Wright Decl. Ex. C.)  Personnel files from Dr. Bajorek's former employer—from which he retired over 4 years ago (*see* Bajorek Decl. ¶ 22)—also have no relevance to any issue in this lawsuit.

On December 19, 2012, Shukh issued an amended subpoena to IBM, additionally seeking "all stock option agreement [sic] that were the subject of [the IBM cases], any notice of exercise by Christopher H. Bajorek at issue therein, any notice of rescission by or on behalf of IBM."[2]  (Wright Decl. Ex. D.)

On December 28, 2012, Shukh served a subpoena on Dr. Bajorek seeking broad categories of documents relating to the IBM cases and their confidential settlement, as well as "all transcripts" and "all . . . reports" rendered by Dr. Bajorek "in any cases" at "at any time," including a pending case between Carnegie Mellon University and Marvell

---

[2] Shukh has since withdrawn the request in paragraph 1 of his amended subpoena, except for the notice and orders of dismissal in the IBM cases, and the request in paragraph 2. (Wright Decl. Ex. O.)

Technology Group ("*Marvell* case").  (Bajorek Decl. Ex. C.)  The subpoena requests

were directed to:

1.  Any and all stock option agreements that were the subject of [the IBM cases], any notice of exercise by Dr. Christopher H. Bajorek at issue therein, [and] any notice of rescission by or on behalf of IBM . . .

2.  Any and all documents, ESI, and/or other things relating or pertaining in any way to the disposition or settlement of either or both of those cases, including any documents showing any payments made by Dr. Bajorek to IBM or vice versa.

3.  Any and all transcripts of any depositions, and all exhibits thereto, given by Dr. Bajorek in either or both of those cases.

4.  Any and all declarations, affidavits or other statements, sworn or unsworn, and all exhibits thereto, given by Dr. Bajorek in either or both of those cases.

5.  Any and all expert or other types of reports rendered by Dr. Bajorek in the case entitled *Carnegie Mellon University v. Marvell Technology Group, Ltd. et al.*, Case No. 2:09-cv-00290-NBF (W.D. PA), Hon. Nora Barry Fischer, Presiding.

6.  Any and all transcripts of any depositions, and all exhibits thereto, given by Dr. Bajorek in the case entitled *Carnegie Mellon University v. Marvell Technology Group, Ltd. et al.*, Case No. 2:09-cv-00290-NBF (W.D. PA), Hon. Nora Barry Fischer, Presiding.

7.  Any and all expert or other types of reports rendered at any time by Dr. Bajorek in any cases, arbitrations or other proceedings, other than any reports called for by the above paragraphs.

8.  Any and all transcripts of any depositions in any cases, arbitrations or other proceedings, given by Dr. Bajorek at any time, other than the transcripts called for by the above paragraphs.

(*Id.*)

On January 4, 2013, Shukh served a Rule 34 request on Seagate seeking "all files,

records, documents, ESI and other things of any kind relating or pertaining in any way

to" Dr. Bajorek's reports and testimony in a case between Siemens AG and Seagate involving a patent that is unrelated to the patents on which Shukh claims he is a co-inventor ("*Siemens* case") and a pending state court trade secrets case and related arbitration between Seagate and Western Digital Corporation ("*Western Digital* case") involving technology not at issue here.  (Wright Decl. Ex. E; *see* Bajorek Decl. ¶¶ 6-7, 10 & Ex. D.)

On January 7, 2013, Shukh served a subpoena on the AAA seeking "***the entire case file***" for the arbitration relating to the trade secrets *Western Digital* case, "including but not limited to any reports, transcripts of testimony, motions, briefs or other things related in any way to Dr. Christopher H. Bajorek, who was supposedly an expert for SEAGATE TECHNOLOGY LLC."  (Wright Decl. Ex. F (emphasis added).

### B.    Shukh's Discovery Relating to Ms. Heitzman.

Ms. Heitzman is another target of Shukh's improper discovery.  She was retained by Seagate to provide an expert report and expert testimony addressing issues relating to job search efforts by Shukh.  (Heitzman Decl. ¶ 1.)

On December 21, 2012, Shukh issued a subpoena to the IARP, seeking all documents "relating or pertaining in any way" to presentations and publications by Ms. Heitzman over a 10-year period.  (Wright Decl. Ex. G.)  To be clear, Shukh did not just seek the presentations and publications from the IARP; he sought all documents relating to those presentations and publications.  (*Id.*)

On December 28, 2012, Shukh issued a subpoena to the law firm of Sedey Harper P.C., which had previously retained Ms. Heitzman to represent a plaintiff in an

employment-related action, seeking "[a]ll documents . . . relating or pertaining in any way to" her reports in that case and "any transcripts of any testimony . . . by Ms. Heitzman." (Wright Decl. Ex. H.) Once again, Shukh sought more than just expert reports; he also sought the underlying documents on which Ms. Heitzman relied.

On January 2, 2013, Shukh issued a subpoena to the College of St. Benedict, where Ms. Heitzman earned her Bachelor of Science in Psychology in 1983. (Wright Decl. Ex. I; Heitzman Decl. Ex. A.) On the same day, Shukh issued a subpoena to Southern Illinois University, where Ms. Heitzman earned her Master of Arts in Rehabilitation Counseling in 1985, and a subpoena on the University of St. Thomas, where Ms. Heitzman is currently pursuing her Doctorate in Counseling Psychology. (Wright Decl. Exs. J, K; Heitzman Decl. Ex. A.) The subpoena was not limited to confirmation that Ms. Heitzman had obtained or was pursuing certain degrees. Instead, Shukh sought copies of transcripts showing "the grades earned" and the titles of all courses taken by Ms. Heitzman. (Wright Decl. Exs. I, J, K.) Shukh issued amended subpoenas to the College of St. Benedict and the University of St. Thomas on January 3, 2013. (*Id.* Exs. L, M.)

On January 4, 2013, Shukh served a subpoena on Ms. Heitzman seeking "[a]ll documents . . . relating or pertaining in any way to [four presentations made by Ms. Heitzman in 2011 and 2012]." (Heitzman Decl. Ex. B.) The subpoena was also directed to:

> 1. Any and all reports (including all appendices) that you rendered in the case of *Kenyata Woods v. Xcel Energy Services, Inc. D/b/a Xcel Energy, Inc.*, Case No. 06-cv-05014-PJS-JJG (U.S. District Court for the District of

Minnesota), and any and all transcripts of your testimony whether in trial, hearing, deposition or otherwise in that case.

2. A list of cases in which you have testified <u>in court</u> as an expert witness, including the case name, case number, and court, and the party on whose behalf you testified, and the topics of your testimony.

3. Any and all reports (with all exhibits), and/or transcripts of testimony (deposition, trial or hearing) in any case, arbitration, matter or proceeding (excluding *Bryant v. Allianz Life Insurance*) in which you made and/or rendered an opinion concerning regarding [sic] the reasonableness or unreasonableness of any "job search efforts."

(*Id.*)

In addition, Shukh's subpoena to Ms. Heitzman targeted cases where she had previously been retained by counsel for Seagate, seeking:

Any report that you have made at any time in any cases, contested proceedings or other matters in which you were retained, hired or otherwise consulted by the individual attorneys for Defendants herein: or any other attorneys at the firms of Faegre & Benson LLP, Baker Daniels LLP, and/or Faegre Baker Daniels LLP.

(*Id.*)

In sum, Shukh's expert discovery to date constitutes 13 subpoenas (in 5 different districts) and a Rule 34 request to Seagate—all of it on irrelevant and intrusive matters.

## II.    Dr. Bajorek's Employment History and Previous Expert Testimony.

As previously stated, Dr. Bajorek submitted a rebuttal expert report in which he provided opinions on the inventions and inventorship issues and responded to the opinions of Shukh's expert relating to the six patents involved in Shukh's correction of inventorship claim.  (Bajorek Decl. ¶ 1.)  Set forth below is a summary of Dr. Bajorek's

past employment and expert testimony related to Shukh's subpoenas and discovery requests.

### A.    Dr. Bajorek's Employment at IBM and Intematix.

Dr. Bajorek has over 30 years' experience in the hard disc drive ("HDD") industry.  (*See* Bajorek Decl. Exs. A, B.)  He was employed in various roles at IBM from 1971 to 1996, including as the Vice President, Technology Development and Manufacturing, from 1991 to 1996.  (*Id.*)  IBM granted Dr. Bajorek stock options during his employment.  (*Id.* ¶ 19.)  The terms of IBM's stock option agreement are confidential, but generally speaking, the agreement required an employee to return any profits from stock options if the employee worked for a competitor within six months after he exercised his options.  (*Id.*)  Within six months of exercising his stock options, Dr. Bajorek went to work for Komag, which supplied magnetic film disks to IBM.  (*Id.*)  As a result, Dr. Bajorek sought a declaratory judgment that he was in compliance with IBM's stock option agreement and that IBM was not entitled to cancel his stock options.  (*Id.*)  After Dr. Bajorek filed that action, IBM sued him for breach of contract and fraudulent misrepresentation for exercising the stock options.  (*Id.*); *see also IBM v. Bajorek*, 191 F.3d 1033 (9th Cir. 1999).  The IBM cases were settled on confidential terms, and Dr. Bajorek was never found liable for breach of contract or fraudulent misrepresentation.[3]

---

[3] "Because Dr. Bajorek prevailed on the pleadings" in the IBM cases, the facts in the Ninth Circuit opinion are "as IBM pleaded them, and have not yet been proved."  *IBM*, 191 F.3d at 1036.  Moreover, the California Supreme Court has rejected the Ninth Circuit's interpretation of California law in *IBM v. Bajorek*.  *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 293 (Cal. 2008) ("California courts have not embraced the Ninth Circuit's narrow-restraint exception. . . . We reject Andersen's contention that we should

(Bajorek Decl. ¶ 19.)  Despite the obvious irrelevance of the IBM cases to this case,

Shukh has served multiple subpoenas on IBM and on Dr. Bajorek seeking information

about the IBM cases and the underlying stock options.  (*See* Wright Decl. Ex. B, D;

Bajorek Decl. Ex. C.)

After he retired from Komag, Dr. Bajorek was employed as the Vice-President of

Advanced Development from 2007 to 2008 at Intematix Corporation, an advanced

materials development company.  (Bajorek Decl. ¶¶ 22-23 & Exs. A, B.)  The materials

developed by Intematix have no relation to the technology used in HDDs, and there is no

overlap between the materials developed by Intematix and the inventorship issues on

which Dr. Bajorek has opined in this case.  (Bajorek Decl. ¶ 23.)  Notwithstanding this

lack of relevance, Shukh has also served a subpoena on Intematix seeking Dr. Bajorek's

entire personnel file.  (Wright Decl. Ex. C.)

## B.   Dr. Bajorek's Previous Expert Testimony.

Dr. Bajorek now works as a consultant.  (*See* Bajorek Decl. Exs. A, B.)  He has

testified as an expert in three proceedings:

1. *Siemens AG v. Seagate Technology*, Civ. Action No. SA CV 06-788 JVS (C.D. Cal.);

2. *Seagate Technology LLC v. Western Digital Corporation, et al.*, Court File No. 27-CV-06-1900 (Fourth Judicial District, State of Minnesota) and the associated American Arbitration Association arbitration (No. 65 160 00129 07); and

3. *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, Civ. Action No. 2:09-cv-00290-NBF (W.D. Pa.) ("*Marvell* case").

---

adopt a narrow-restraint exception to section 16600 . . ." (citations and quotation marks omitted).

(*Id.* ¶ 5 & Ex. B.)  Dr. Bajorek did not opine on patent inventorship, patent infringement, or patent invalidity in ***any*** of those cases.  (*Id.* ¶¶ 7, 11, 15.)  As shown in the following description of the *Siemens*, *Western Digital*, and *Marvell* cases and Dr. Bajorek's opinions in those cases, none of those cases—nor Dr. Bajorek's opinions—have any relevance to Shukh's claims or Dr. Bajorek's opinions in this case.

The *Siemens* case was a patent case relating to the validity and enforceability of U.S. Patent No. 5,686,838 ("the '838 patent") and damages issues.  (*Id.* ¶¶ 6-7.)  The '838 patent involved giant magnetoresistive technology.  (*Id.* ¶ 6.)  Dr. Bajorek provided an expert report, deposition testimony, and trial testimony on ***damages***—not technical—issues in the *Siemens* case, specifically on the value of the addition of a synthetic antiferromagnetic layer to read heads and on the availability of non-infringing alternatives to Seagate.  (*Id.* ¶ 7.)  Simply put, there is no overlap between the damages issues on which he opined in the *Siemens* case and the inventorship issues on which Dr. Bajorek has opined in this case.  (*Id.*)  Moreover, while Dr. Bajorek's trial testimony was public, his expert report and deposition testimony in the *Siemens* case—which were based in part on his review of confidential Siemens documents—are subject to a protective order entered by the court.  (*Id.* ¶ 8.)  In any event, Dr. Bajorek does not recall having any documents relating to the *Siemens* case.  (*Id.* ¶ 9.)

The *Western Digital* case is a trade secrets case involving a former Seagate employee who left Seagate to work at Western Digital.  (*Id.* ¶ 10.)  The trade secrets at issue related to the composition, dimensions, and sequence of thin films used in tunneling magnetoresistive read heads.  (*Id.*)  The *Western Digital* case, which is still pending,

includes an arbitration and a state court proceeding.  (*Id.*)  Dr. Bajorek provided an expert report and arbitration testimony on the trade secrets at issue in the *Western Digital* case. (*Id.* ¶ 11.)  As in the *Siemens* case, there is no overlap between the trade secrets issues on which Dr. Bajorek opined in the *Western Digital* case and his inventorship opinions in this case.  (*Id.*)  His expert report in the *Western Digital* case is subject to a protective order entered by the court and contains confidential information of Western Digital and Seagate, as does his arbitration testimony, which is under seal.  (*See id.* ¶ 12.)  The only documents Dr. Bajorek recalls retaining from the *Western Digital* case are electronic copies of drafts and/or the final version of his expert report, all of which would contain confidential information of Western Digital and Seagate.  (*See id.* ¶ 13.)

The *Marvell* case is a patent infringement case involving U.S. Patent Nos. 6,201,839 and 6,438,180, which relate to signal processing and sequence detection.  (*Id.* ¶ 14.)  Those patents are unrelated to the six patents at issue in this case.  Dr. Bajorek provided an expert report, deposition testimony, and trial testimony relating to the HDD industry on behalf of Carnegie Mellon University in the *Marvell* case.  (*Id.* ¶ 15.)  He opined on the HDD sales cycle, the HDD supply chain, and standard business practices in the HDD industry.  (*Id.*)  Once again, there is no overlap between the HDD industry issues on which Dr. Bajorek opined in the *Marvell* case and his inventorship opinions in this case.  (*Id.*)  While Dr. Bajorek's trial testimony was public, his expert report and deposition testimony in the *Marvell* case are subject to a protective order entered by the court, and both contain confidential information of Marvell and Carnegie Mellon.  (*Id.* ¶ 17.)  Again, any documents Dr. Bajorek has relating to the *Marvell* case are subject to

the court's protective order and contain confidential information of both Marvell and Carnegie Mellon.  (*Id.* ¶ 18.)

Even though Dr. Bajorek did not attempt to offer any opinions on the signal processing and sequence detection technology at issue in the *Marvell* case, or hold himself out as an expert in that technology, the court granted Marvell's motion to preclude Dr. Bajorek from testifying about that technology.  (*Id.* ¶ 16); *see Carnegie Mellon Univ. v. Marvell Tech. Grp.*, 2012 WL 3686693, at *4 (W.D. Pa. Aug. 24, 2012) ("Dr. Bajorek openly admits that he is not expert in Viterbi technology.  But, he is not proffered as an expert witness on such matters.") (citations omitted)).  However, the court permitted Dr. Bajorek to testify as an expert on all of the subjects on which he offered an expert opinion in his report and at his deposition.  (Bajorek Decl. ¶ 16); *Marvell Tech.*, 2012 WL 3696693, at *4 ("With respect to his non-technical, market-oriented opinions, Dr. Bajorek is clearly qualified.").  Furthermore, there is no overlap in the signal processing and sequence detection technology at issue in the *Marvell* case and Dr. Bajorek's inventorship opinions in this case.   (Bajorek Decl. ¶ 16.)  Despite its obvious lack of relevance, Shukh has served a subpoena on Dr. Bajorek seeking all of his reports and transcripts from the *Marvell* case.  (Bajorek Decl. Ex. C.)

## III.   Ms. Heitzman's Previous Expert Testimony.

Ms. Heitzman, the second target of Shukh's improper discovery, provided an expert report addressing issues relating to job search efforts by Shukh.  (Heitzman Decl. ¶ 1.)  Set forth below is a summary of Ms. Heitzman's past expert testimony relevant to Shukh's subpoenas and discovery requests.

Ms. Heitzman has been engaged as an expert in over 100 cases.  (*Id.* ¶ 6.)  She does not have the list requested by Shukh in his subpoena of each and every case in which she has testified as an expert witness.  (*Id.* ¶ 7 & Ex. B.)  Ms. Heitzman also is not aware of which of her expert reports contain confidential information and are subject to protective orders, because the attorneys make that determination, not Ms. Heitzman.  (*Id.* ¶ 8.)  Determining which reports contain confidential information and are subject to protective orders would require Ms. Heitzman to undertake the burdensome task of contacting each attorney on each case for which she was engaged as an expert to determine if the report was subject to a protective order.  (*Id.*)

Ms. Heitzman has been retained and authored reports in three other unrelated cases by attorneys at Faegre Baker Daniels LLP and/or Faegre & Benson LLP.  (*Id.* ¶ 10.)  As stated above, she is not aware as to which of those reports are subject to protective orders.  (*Id.*)  However, another report Ms. Heitzman recently prepared for an attorney at Faegre Baker Daniels LLP relied upon and refers to information, including the plaintiff's medical records, that was designated confidential by the opposing party in the matter.  (*Id.*)

As to the presentations sought by Shukh in his subpoena to Ms. Heitzman, three are duplicative because he previously sought them in his subpoena to the IARP.  (*Id.* ¶ 4.)  However, Ms. Heitzman is willing to produce the fourth presentation.  (*Id.* ¶ 5.)

## ARGUMENT

### I.    The Rules Prohibit Irrelevant, Burdensome, and Harassing Discovery.

The scope of discovery is limited to non-privileged matters that are "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  While relevant information need not necessarily be admissible, "this often intoned legal tenet should not be misapplied so as to allow ***fishing expeditions in discovery***."  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993) (emphasis added).  Rather, a "***threshold showing of relevance must be made*** before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  *Id.* "[D]iscovery may not be had on matters irrelevant to the subject matter involved in the pending action."  *See Misc. Dkt. Matter # 1 v. Misc. Dkt. Matter # 2*, 197 F.3d 922, 925 (8th Cir. 1999) (citing Fed. R. Civ. P. 26(b)(1)).

Even if discovery is relevant, courts may limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit" or "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C). Indeed, "***[a]ll discovery*** is subject to the limitations imposed by Rule 26(b)(2)(C)."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  The party opposing discovery bears the burden of showing that a discovery request is overly broad and burdensome.  *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 515-16 (D. Minn. 1992).

The scope of discovery is further limited by courts' ability to enter protective orders pursuant to Rule 26(c).  *See* Fed. R. Civ. P. 26(b)(1) (scope may be further

"limited by court order"); Fed. R. Civ. P. 26(c).  Because discovery permitted by the

Rules presents the potential for abuse, "the federal rules 'confer[] broad discretion on the

[district] court to decide when a protective order is appropriate and what degree of

protection is required.'"  *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th

Cir. 2003) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  Rule 26(c)

provides, in relevant part:

> The court may, for good cause, issue an order to protect a party or person
> from annoyance, embarrassment, oppression, or undue burden or expense,
> including one or more of the following:
>
> (A)   forbidding the disclosure or discovery;
>
> (B)   specifying terms, including time and place, for the
> disclosure or discovery;
>
> (C)   prescribing a discovery method other than the one
> selected by the party seeking discovery; [and]
>
> (D)   forbidding inquiry into certain matters, or limiting the
> scope of disclosure or discovery to certain matters . . . .

Fed. R. Civ. P. 26(c)(1).  The party seeking the order bears the burden of establishing the

requisite good cause for the protective order.  *Northbrook Digital, LLC v. Vendio*

*Services, Inc.*, 625 F. Supp. 2d 728, 734 (D. Minn. 2008).

Where, as here, a party has improperly issued subpoenas to a third party, a motion

for a protective order under Rule 26(c) is an appropriate procedural mechanism by which

the opposing party can challenge the improperly issued subpoena.  *See Marvin Lumber &*

*Cedar Co. v. PPG Indus.*, 177 F.R.D. 443, 445 n.2 (D. Minn. 1997).  In addition, Federal

Rule of Civil Procedure 16(a) grants the district court authority to "establish[] early and

continuing control so that the case will not be protracted because of lack of management"
and to "discourag[e] wasteful pretrial activities."  Fed. R. Civ. P. 16(a).

This Court has been very clear that it will not permit abusive discovery:  ***"[A]s a
court, we have to be strict about letting discovery get out of hand. And I am not going
to permit unbridled discovery."***  (Wright Dec. Ex. A at 41:19-21.)  For the reasons set
forth below, Seagate respectfully requests that the Court exercise its authority under
Rules 16(a), 26(b)(2)(C), and 26(c) and enter the protective order sought by Seagate
because Shukh's expert discovery constitutes the type of harassing, wasteful, and
unbridled discovery precluded by the Rules and expressly rejected by this Court.

## II.      The Court Should Order Shukh to Withdraw His Subpoenas Requests to IBM and Dr. Bajorek Relating to the IBM Cases.

The Court should grant Seagate's motion as to the discovery Shukh seeks from
IBM and Dr. Bajorek regarding the IBM cases primarily because the requested
documents are irrelevant and would not be admissible at trial, and because the discovery
has no other purpose than to annoy, embarrass, and burden Dr. Bajorek.  Shukh initially
requested from IBM "all publicly filed documents . . . relating or pertaining in any way to
[the IBM cases]," "all documents . . . relating or pertaining in any way to the disposition
or settlement of [the IBM cases]," and "all stock option agreement[s]" that were the
subject of the IBM cases.  (Wright Decl. Exs. B, D.)  While he has withdrawn his
requests to IBM for some of the publicly-available documents and the stock option
agreements, Shukh still seeks all documents relating to the settlement of the IBM cases
from IBM and from Dr. Bajorek.  (Bajorek Decl. Ex. C, Wright Decl. Ex. O.)  Shukh also

17

seeks the stock option agreements from Dr. Bajorek.  (Bajorek Decl. Ex. C.)  In addition,

Shukh seeks from Dr. Bajorek "all transcripts of any depositions, and all exhibits thereto"

and "all declarations, affidavits or other statements, sworn or unsworn, and all exhibits

thereto" given by Dr. Bajorek in the IBM cases.  (*Id.*)

     None of this discovery is relevant to any issue in this case or to the inventorship

opinions Dr. Bajorek has rendered in this case.  The IBM cases related to Dr. Bajorek's

exercise of stock options in 1996, over 15 years ago.  (Bajorek Decl. ¶ 19.)  Evidence

relating to the IBM cases would have absolutely no tendency to make any fact in this case

relating to inventorship, fraud, or discrimination more or less probable, and consequently

is irrelevant to this action.  *See* Fed. R. Evid. 401.  The irrelevance of the IBM cases

alone provides a basis for granting a protective order as to Shukh's subpoenas to IBM in

their entirety and Shukh's subpoena to Dr. Bajorek insofar as it seeks documents relating

to those cases.

     Moreover, to the extent Shukh seeks documents relating to the settlement and

disposition of the IBM cases, the terms of the settlement are confidential.  (Bajorek Decl.

¶ 19.)  Dr. Bajorek cannot violate the confidentiality agreement relating to the settlement

terms simply because Shukh wants to pry into it, and the burden and expense required for

Dr. Bajorek to obtain permission to do so from IBM far outweighs the benefit to Shukh

of any information about the settlement terms of an irrelevant 15-year-old dispute.  *See*

Fed. R. Civ. P. 26(b)(2)(C)(iii).

     Finally, the Court should issue a protective order as to all discovery relating to the

IBM cases because Shukh seeks it for impermissible purposes.  During the meet-and-

confer on this motion, counsel for Shukh argued that the IBM cases were somehow relevant because IBM *alleged* that Dr. Bajorek was liable for fraudulent misrepresentation.  But no court or jury ever found Dr. Bajorek liable for fraudulent misrepresentation, (Bajorek Decl. ¶ 19), and an allegation of fraudulent misrepresentation with respect to Dr. Bajorek's exercise of stock options is still irrelevant to Shukh's inventorship, fraud, and employment discrimination claims against *Seagate*.  To the extent Dr. Shukh seeks to use documents relating to the IBM cases to impeach Dr. Bajorek's character for truthfulness, Federal Rule of Evidence 608(b) expressly prohibits any such use of those documents at trial.[4]  *See* Fed. R. Evid. 608(b) ("extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness").

Given the irrelevance and inadmissibility of the requested documents, the only purpose for Shukh's subpoena requests to IBM and Dr. Bajorek for documents relating to the IBM cases can be to annoy and try to embarrass Dr. Bajorek.  The Court "should not neglect [its] power to restrict discovery where justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Misc. Dkt. Matter # 1*, 197 F.3d at 926 (citations and quotations omitted).  At the very least, the

---

[4] Seagate would move to preclude any inquiry into the IBM cases at trial given the remoteness in time of Dr. Bajorek's 1996 exercise of stock options, the sideshow that would result from any such inquiry, and the fact that testimony on this topic would confuse the issues and mislead the jury, but these are also reasons that support a protective order under the balancing of Rule 26(b)(2)(C).  *See* Fed. R. Evid. 608(b) adv. cmt. notes ("Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time.  Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury. . .).

burden and oppression of these requests far "outweighs its likely benefit . . . in resolving the issues" in this case.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  The Court should grant Seagate's motion for protective order as to Shukh's subpoena requests to IBM and Dr. Bajorek relating to the IBM cases because the discovery sought is irrelevant, inadmissible, and is solely for the purposes of annoying, embarrassing, and burdening Dr. Bajorek.

**III.    The Court Should Order Shukh to Withdraw His Subpoena Request to Intematix.**

Shukh's subpoena to Dr. Bajorek's former employer, Intematix, seeks "[a]ll documents . . . relating or pertaining in any way to any and all personnel files of Dr. Christopher H. Bajorek, including anything related or pertaining in any way whatsoever to his hiring and/or termination."  (Wright Decl. Ex. C.)  Dr. Bajorek's employment history at Intematix has no relevance to Shukh's inventorship, fraud, and employment discrimination claims, and thus exceeds the scope of permissible discovery.  *See* Fed. R. Civ. P. 26(b)(2).  Shukh's subpoena is nothing more than an impermissible "fishing expedition into [Dr. Bajorek's] work and personal history."  *See Weber v. Mark One Elec. Co.*, 2010 WL 2134323, at *1 (W.D. Mo. May 26, 2010).  It is apparent that the sole purpose behind Shukh's subpoena to Intematix is to pry into Dr. Bajorek's employment history in the hope of finding some embarrassing information about Dr. Bajorek.  Dr. Shukh's to subpoena to Intematix is entirely improper, *see* Fed. R. Civ. P. 26(c), and the Court should grant a protective order requiring Shukh to withdraw the subpoena.

**IV.    The Court Should Order Shukh to Withdraw His Subpoena Requests Relating to Dr. Bajorek's Previous Expert Reports and Testimony.**

Shukh served a subpoena on Dr. Bajorek seeking all of Dr. Bajorek's reports and transcripts of any testimony from "***any***" proceeding, which would include the *Siemens*, *Western Digital*, and *Marvell* cases.  (Bajorek Decl. Ex. C (emphasis added).)  Shukh also issued an incredibly broad subpoena to the AAA seeking the "***entire case file***" for the *Western Digital* trade secrets arbitration, "including but not limited to any reports, transcripts of testimony, motions, briefs or other things related in any way to Dr. Christopher H. Bajorek, who was supposedly an expert for SEAGATE TECHNOLOGY LLC."  (Wright Decl. Ex. F (emphasis added).)  As if this were not enough, Shukh also served a Rule 34 request on Seagate seeking all of Dr. Bajorek's reports and testimony from the *Siemens* and *Western Digital* cases.[5]  (*Id.* Ex. E.)

Dr. Bajorek's reports and testimony in the *Siemens*, *Western Digital*, and *Marvell* cases are entirely irrelevant to Shukh's inventorship, fraud, and employment discrimination claims here.  There is no overlap between the inventorship issues on which Dr. Bajorek has opined in this case and the damages opinions offered by Dr. Bajorek in the *Siemens* case, the trade secrets opinions he offered in the *Western Digital* case, and the HDD industry opinions he offered in the *Marvell* case.  (Bajorek Decl. ¶¶ 7, 11, 15.)  The irrelevance of the requested documents, standing alone, is sufficient for the Court to grant Seagate's motion for a protective order requiring Shukh to withdraw his subpoenas

---

[5] Seagate served its written objections to that request on January 7, 2013.  (*See* Wright Decl. Ex. N.)

21

to Dr. Bajorek and the AAA and preventing Shukh from pursuing his Rule 34 request to

Seagate.  *See* Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C).

"Even if [the reports and documents relating to the *Siemens*, *Western Digital*, and

*Marvell* cases were] relevant, discovery is not permitted where no need is shown, or

compliance would be unduly burdensome, or where harm to the person from whom

discovery is sought outweighs the need of the person seeking discovery of the

information." *Misc. Dkt. Matter # 1*, 197 F.3d at 925 (quoting *Micro Motion, Inc. v.*

*Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) (quotations omitted)); *see also* Fed.

R. Civ. P. 26(b)(2)(C) and 26(c).  Here, Shukh's discovery requests directed to Dr.

Bajorek's opinions in unrelated cases on unrelated issues would provide marginal (if any)

benefit to Shukh.  To the extent Shukh seeks to justify these requests on the grounds that

he is looking for possible inconsistencies between Dr. Bajorek's earlier opinions and the

opinions he rendered in this case, there is no reason to think any such inconsistent

statement exists given the lack of overlap between Dr. Bajorek's inventorship opinions in

this case and his damages, trade secrets, and HDD industry opinions in the *Siemen*s,

*Western Digital*, and *Marvell* cases.

To date, Shukh's only explanation during the meet and confer for seeking

discovery directed to these unrelated and irrelevant cases is that the court in the *Marvell*

case excluded Dr. Bajorek from testifying on certain subjects.  But in view of the

differences between the signal processing and sequence detection technology at issue in

the *Marvell* case and the technology at issue in this case, Dr. Bajorek's exclusion is

entirely irrelevant to his credibility or qualifications as an expert witness here.  *See*

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, 2011 WL 204619, at *8

n.4 (E.D. Pa. Jan. 20, 2011) ("Plaintiff emphasizes the fact that an expert report authored

by Mr. Nielsen was excluded in a different case because it contained legal conclusions

and failed to provide any support for the conclusions reached.  Mr. Nielsen's report in

that case, however, was on an entirely different subject area [and] Plaintiff has not made

any showing that the report in that matter is at all comparable to the one at issue in this

matter.") (citations omitted).  Moreover, the *Marvell* court did not preclude Dr. Bajorek

from testifying on any subject on which he actually offered an opinion.  (Bajorek Decl.

¶ 16); *Marvell Tech.*, 2012 WL 3686693, at *4 (W.D. Pa. Aug. 24, 2012).  Dr. Bajorek's

exclusion in the *Marvell* case does not justify discovery of his expert report and

testimony.

Further, Dr. Bajorek and the AAA will be harmed and subject to undue burden if

the Court does not enter the requested protective order.  Dr. Bajorek may not produce his

expert reports in the *Western Digital* and *Marvell* cases or his arbitration testimony in the

*Western Digital* case without violating protective orders entered by another court.

(Bajorek Decl. ¶¶ 12, 17.)  For this reason alone, the Court should require Shukh to

withdraw these subpoenas.  *E.g.*, *Dushkin Pub. Grp., Inc. v. Kinko's Serv. Corp.*, 136

F.R.D. 334, 336 (D.D.C. 1991) ("Therefore, the court will not require the production of

documents which contain information that has been deemed confidential pursuant to the

*Basic Books* protective order.").  Likewise, the subpoena to the AAA requests the "entire

case file" of the trade secrets *Western Digital* case, including the documents relating to

Dr. Bajorek's opinions, which is subject to a protective order (and in many instances

23

contain Western Digital and Seagate confidential information) and cannot be produced. (*See* Bajorek Decl. ¶¶ 12-13.)  *E.g.*, *Dushkin*, 136 F.R.D. at 336.

Turning to Shukh's request for the trial transcripts from the *Siemens* and *Marvell* cases, those transcripts are public.  (*Id.* ¶¶ 8, 17.)  "It is well established that discovery need not be required of documents of public record which are equally accessible to all parties."  *Dushkin*, 136 F.R.D. at 336 (quotations omitted).  The Court should grant Seagate's motion as to those publicly-available documents because Shukh can easily obtain them from court record, which is less burdensome and less expensive for Dr. Bajorek.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Under these circumstances, a protective order requiring Shukh to withdraw the subpoenas to Dr. Bajorek and the AAA is plainly warranted.  *See, e.g.*, *Nat'l Ben. Programs, Inc. v. Express Scripts, Inc.*, 2011 WL 6009655, at *4-5 (E.D. Mo. Dec. 1, 2011) (issuing protective order prohibiting discovery of documents from other proceeding where certain documents were subject to another court's protective order, other documents were publicly available; the documents were marginally relevant, and justification for the subpoena was that it was "possible" that party took inconsistent position in the unrelated proceeding); *SSL Servs., LLC v. Citrix Sys., Inc.*, 2010 WL 547478, at *2-3 (E.D. Tex. Feb. 10, 2010) (denying motion to compel damages expert reports in unrelated lawsuits under Rule 26(b)(2) in part because the benefit the requesting party would receive from the reports was minimal and the party would have to petition other courts for a modification of protective order); *Surles v. Air France,* 2001 WL 815522, at *4, 7 (S.D.N.Y. July 19, 2001) (denying request for "additional reports

24

that the expert may have prepared" in unrelated actions and noting that "discovery requests could not be 'based on pure speculation or conjecture'").

For all of these reasons, Seagate respectfully requests that the Court order that (1) Shukh must withdraw his subpoena to the AAA in its entirety, (2) Shukh must withdraw his subpoena to Dr. Bajorek for previous expert reports and testimony, (3) Seagate need not produce documents pursuant to Shukh's Rule 34 request regarding Dr. Bajorek's previous expert reports and testimony.

## V.    Ms. Heitzman's Previous Expert Reports and Testimony.

Shukh has subjected Ms. Heitzman to similarly irrelevant and harassing discovery. Shukh seeks from Ms. Heitzman "all reports (including appendices) that you rendered" and "all transcripts of your testimony" in another District of Minnesota case in which Ms. Heitzman offered opinions along with all reports (with all exhibits) rendered and all transcripts of testimony in any proceeding in which Ms. Heitzman "made and/or rendered an opinion concerning regarding [sic] the reasonableness or unreasonableness of any 'job search efforts.'"  (Heitzman Decl. Ex. B.)  Shukh also targeted Ms. Heitzman's previous opinions rendered for counsel for Seagate, expressly requesting "[a]ny report that you have made at any time in any cases, contested proceedings, or other matters in which you were retained, hired or otherwise consulted by the individual attorneys for Defendants herein:  or any other attorneys at the firms of Faegre & Benson LLP, Baker Daniels LLP, and/or Faegre Baker Daniels LLP."  (*Id.*)

Shukh cannot meet his burden to show any relevance of his requests to Ms. Heitzman, and even if he could, the burden of the requests far outweighs any relevance.

Because the attorneys, rather than Ms. Heitzman, decide whether an expert report is subject to a protective order, she does not know which of her reports are subject to a protective order.  (*Id.* ¶ 8.)  For her to determine which expert reports she could produce without violating another court's protective order, she would have to call each attorney for each case in which she has opined and ask them to provide her with that information. (*See id.*)  Given the marginal relevance (if any) of Ms. Heitzman's opinions in other cases, the speculative nature of Shukh's requests, and the burden of complying with the subpoena's request for prior reports and testimony, the Court should grant a protective order requiring Shukh to withdraw the subpoena insofar as it seeks production of Ms. Heitzman's previous reports and testimony.  *See Nat'l Ben. Programs*, 2011 WL 6009655, at *4-5; *Surles,* 2001 WL 815522, at *7; Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 26(c).

**VI.     The Court Should Preclude Shukh from Serving Additional Written Expert Discovery Absent Leave of Court.**

Shukh's conduct over the past four weeks demonstrates his disregard for the Federal Rules and the burdens he has imposed on third parties, as well as a lack of respect for Seagate's experts.  Despite the Court's plain warning that it would not condone "unbridled" and "out of hand" discovery, that is precisely the type of discovery Shukh has engaged in.  To prevent Shukh from additionally burdening third parties and Seagate, Seagate respectfully requests that the Court preclude Shukh from serving further written expert discovery absent leave of Court.

**VII.  Dr. Bajorek and Ms. Heitzman Are Entitled to their Costs in Responding to Shukh's Subpoenas.**

If the Court does not grant Seagate's motion for protective order as to the subpoenas to Dr. Bajorek and Ms. Heitzman, they should be compensated for the expenses they incur in responding to the subpoena.  Rule 45 provides:

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c)(1).  Moreover, Rule 26(c) allows the court to issue an order to protect a party or person from "undue burden or expense."

Dr. Bajorek will incur significant expense if he is required to respond to Shukh's subpoena to him.  He will be required to search for any expert reports and transcripts in his possession relating to the *Siemens*, *Western Digital*, and *Marvell* cases—which he is currently unable to do (Bajorek Decl. ¶ 9), coordinate with the parties in those cases regarding how to handle the protective order issues, and collect and copy the requested documents.  Ms. Heitzman will have to search for any expert reports and transcripts in her possession from the over 100 cases in which she has been engaged as an expert, determine if they are responsive to Shukh's subpoena requests, contact the attorneys for each case to determine if they are subject to a protective order, and collect and copy the requested documents.  If the Court denies Seagate's motion as to the subpoenas to Dr. Bajorek and Ms. Heitzman, Seagate respectfully requests that their compliance with the subpoenas be conditioned on Shukh bearing the costs of Dr. Bajorek's and Ms.

Heitzman's time (at their standard expert rate) and expenses in complying with the subpoena request.  *See, e.g.*, *Hunte Corp. v. Martinelli*, 2010 WL 4813849, at *2 (W.D. Mo. Nov. 19, 2010) (shifting all costs of complying with subpoena to subpoenaing party).

## CONCLUSION

Seagate respectfully requests that the Court, under its power to manage and control discovery in the case before it, issue a protective order requiring Shukh to withdraw the following subpoenas:

1.  the December 28, 2012 subpoena to Dr. Bajorek (Bajorek Decl. Ex. C);

2.  the January 4, 2012 subpoena to Ms. Heitzman (Heitzman Decl. Ex. B);

3.  the December 18, 2012 subpoena to Intematix (Wright Decl. Ex. C);

4.  the January 7, 2013 subpoena to the AAA (Wright Decl. Ex. F); and

5.  the December 17, 2012 and December 18, 2012 subpoenas to IBM (Wright Decl. Exs. B, D).

In addition, Seagate respectfully requests that the Court preclude Shukh from issuing any further written expert discovery absent leave of the Court and that the Court order that Seagate need not produce documents pursuant to Shukh's Rule 34 request regarding Dr. Bajorek's previous expert reports and testimony.  In the alternative, Seagate asks that the Court order Shukh to pay the costs associated with Dr. Bajorek's and Ms. Heitzman's compliance with the subpoenas served on them.

Dated: January 10, 2013 **FAEGRE BAKER DANIELS LLP**

*s/ Elizabeth Cowan Wright*
David J.F. Gross, #208772
david.gross@faegrebd.com
Calvin L. Litsey, #153746
calvin.litsey@faegrebd.com
Charles F. Knapp, #220371
chuck.knapp@faegrebd.com
Chad Drown, #319053
chad.drown@faegrebd.com
Elizabeth Cowan Wright, #387126
elizabeth.cowanwright@faegrebd.com
Sarah Benjes, *pro hac vice*, #39270 (CO)
sarah.benjes@faegrebd.com
Jeya Paul, #386950
jeya.paul@faegrebd.com


2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone:  (612) 766-7000
Fax:  (612) 766-1600

**ATTORNEYS FOR SEAGATE**