# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ALEXANDER M. SHUKH,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SEAGATE TECHNOLOGY LLC, SEAGATE TECHNOLOGY, INC., SEAGATE TECHNOLOGY, SEAGATE TECHNOLOGY PLC, and UNKNOWN OWNERS ASSIGNEES,<br><br>　　　　Defendants. | **DECLARATION OF CHRISTOPHER H. BAJOREK, PH. D., IN SUPPORT OF SEAGATE'S MOTION FOR PROTECTIVE ORDER** |
| SEAGATE TECHNOLOGY, LLC and SEAGATE TECHNOLOGY,<br><br>　　　　Counterclaimants,<br><br>vs.<br><br>ALEXANDER M. SHUKH<br><br>　　　　Counterclaim Defendant. | |

I, Christopher H. Bajorek, Ph. D., declare as follows:

　　　　1.　　　　I have been retained by Seagate Technology LLC to provide an expert report and expert testimony addressing issues relating to inventorship for the inventions claimed in U.S. Patent Nos. 7,684,150; 7,233,457; 7,983,002; 6,525,902; 6,738,236; and 6,548,114, and addressing the opinions of Edward Grochowski, Ph. D., in his report dated October 1, 2012.

　　　　2.　　　　Attached as **Exhibit A** to this declaration is a true and correct copy of Exhibit 1 to my Rebuttal Expert Report, which is my curriculum vitae.

3. Attached as **Exhibit B** to this declaration is a true and correct copy of an amended version of Exhibit 1 to my Rebuttal Expert Report, which supplements my curriculum vitae to list the cases within the past four years in which I have provided expert testimony.

4. Attached as **Exhibit C** to this declaration is a true and correct copy of a subpoena Alexander M. Shukh served on me through Seagate's attorneys, Faegre Baker Daniels LLP, on December 28, 2012.

5. I have testified as an expert at trial or by deposition in the following cases and/or arbitrations:

   a. *Siemens AG v. Seagate Technology*, Civ. Action No. SA CV 06-788 JVS (C.D. Cal.) ("Siemens case");

   b. *Seagate Technology LLC v. Western Digital Corporation, et al.*, Court File No. 27-CV-06-1900 (Fourth Judicial District, State of Minnesota) ("Western Digital case"), and the associated American Arbitration Association arbitration (No. 65 160 00129 07); and

   c. *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, Civ. Action No. 2:09-cv-00290-NBF (W.D. Pa.) ("Marvell case").

**The Siemens Case**

6. The Siemens case was a patent case relating to the validity and enforceability of U.S. Patent No. 5,686,838 ("the '838 patent"). The '838 patent involved giant magnetoresistive technology, namely, the addition of a synthetic antiferromagnetic layer to a read head in a hard disk drive ("HDD"). A copy of the '838 patent is attached as **Exhibit D** to this declaration.

7. I provided an expert report, deposition testimony, and trial testimony on damages issues in the Siemens case. In particular, I opined on the value of the addition of a synthetic antiferromagnetic layer to read heads and on the availability of non-infringing alternatives to Seagate. I did not opine on patent inventorship, patent infringement, or patent invalidity in the

Siemens case. Moreover, there is no overlap in the damages issues on which I opined in the Siemens case and the inventorship issues on which I have opined in this case.

8. My expert report and deposition testimony in the Siemens case were subject to a protective order entered by the court, and I reviewed confidential Siemens documents in forming my opinions. My trial testimony was public.

9. I am currently away from my home, where my records and files are kept, and will not be returning until January 20, 2013. I am therefore unable to review my records and files at this time. However, to the best of my recollection, I do not have any documents relating to the Siemens case.

**The Western Digital Case**

10. The Western Digital case is a trade secrets case involving a former Seagate employee who left Seagate to work at Western Digital. The trade secrets at issue related to the composition, dimensions, and sequence of thin films used in Tunneling Magnetoresistive read heads. The Western Digital case includes an arbitration and a state court proceeding. The case is still pending.

11. I provided an expert report and arbitration testimony on the trade secrets at issue in the Western Digital case. I did not opine on patent inventorship, patent infringement, or patent invalidity in the Western Digital case. Moreover, there is no overlap in the trade secrets issues on which I opined in the Western Digital case and the inventorship issues on which I have opined in this case.

12. My expert report in the Western Digital case was subject to a protective order entered by the court and contains confidential information of Western Digital. My arbitration testimony was under seal and also contained confidential information of Western Digital.

13. To the best of my recollection, I do not have any documents relating to the Western Digital case other than electronic copies of drafts and/or the final version of my expert report, all of which would contain confidential information of Western Digital.

**The Marvell Case**

14. The Marvell case is a patent infringement case involving U.S. Patent Nos. 6,201,839 and 6,438,180, which relate to signal processing and sequence detection. Copies of those patents are attached to this declaration as **Exhibits E** and **F**.

15. I provided an expert report, deposition testimony, and trial testimony on the HDD industry in the Marvell case. In particular, I opined on the HDD sales cycle, the HDD supply chain, and standard business practices in the HDD industry. I did not opine on patent inventorship, patent infringement, or patent invalidity in the Marvell case. Moreover, there is no overlap in the HDD industry issues on which I opined in the Marvell case and the inventorship issues on which I have opined in this case.

16. Despite the fact that I did not attempt to offer any opinions on the signal processing and sequence detection technology at issue in the Marvell case, nor did I hold myself out as an expert in that technology, Marvell Technology moved to preclude me from testifying about that technology. The court granted Marvell Technology's motion. However, the court found I was qualified as an expert in and permitted me to testify on all of the subjects on which I offered an expert opinion in my report and at my deposition, namely the HDD sales cycle, the HDD supply chain, and standard business practices in the HDD industry. Further, there is no overlap in the signal processing and sequence detection technology at issue in the Marvell case and the inventorship issues on which I have opined in this case.

17. My expert report and deposition testimony in the Marvell case were subject to a protective order entered by the court. They both contain confidential information of Marvell and Carnegie Mellon. My trial testimony was public.

18. While I believe I have documents relating to the Marvell case at my home, those documents are subject to the court's protective order and contain confidential information of Marvell and Carnegie Mellon.

**The IBM Cases**

19. I was employed by IBM between 1971 and 1996. During my employment, IBM granted me stock options. The terms of IBM's stock option agreement are confidential. Generally speaking, the agreement required an employee to return any profits from stock options if the employee worked for a competitor within six months after he exercised his options. I exercised my stock options and within six months, went to work for Komag, which supplied magnetic film disks to IBM. I sought a declaratory judgment that I was in compliance with IBM's stock option agreement and that IBM was not entitled to cancel my stock options. After I filed that action, IBM sued me for breach of contract and fraudulent misrepresentation with respect to my exercise of the stock options. The cases were the 1996 and 1997 IBM cases referred to Dr. Shukh's subpoena to me (collectively, "IBM cases"). The IBM cases were settled on confidential terms. No court or jury found that I was liable for breach of contract or for fraudulent misrepresentation.

20. The IBM cases did not involve any patents or technical subject matter, and I did not offer any expert opinions in the IBM cases.

21. I do not have any documents relating to the IBM cases.

22. I was the Vice President, Advanced Development, of Intematix between 2007 and 2008. I also worked as a consultant for Intematix before and after my employment as Vice President, Advanced Development.

23. Intematix is an advanced materials development company. The technology developed by Intematix has no relation to the technology used in HDDs, and there is no overlap in the technical subject matter of the materials developed by Intematix and the inventorship issues on which I have opined in this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 9, 2013

_____
Christopher H. Bajorek, Ph. D.