# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ALEXANDER M. SHUKH, | Civil No. 10-404 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD CLAIM AND CORRECTION OF INVENTORSHIP CLAIM** |
| SEAGATE TECHNOLOGY, LLC, SEAGATE TECHNOLOGY, INC., SEAGATE TECHNLOGY, UNKNOWN OWNERS AND ASSIGNEES, and SEAGATE TECHNOLOGY, PLC, | |
| Defendants. | |

Constantine John Gekas, **GEKAS LAW, LLP**, 11 South LaSalle Street, Suite 1700, Chicago, IL 60603; and James H. Kaster, **NICHOLS KASTER, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, for plaintiff.

Chad Drown, Calvin L. Litsey, Elizabeth Cowan Wright, and Jeya Paul, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for defendants.

Plaintiff Alexander M. Shukh filed this action against Defendants Seagate Technology, LLC, Seagate Technology, Inc., Seagate Technology, and Seagate Technology, PLC (collectively, "Seagate"), alleging numerous claims arising out of Seagate's employment and termination of Shukh. In particular, Shukh brought claims for correction of inventorship and fraud[1] resulting from Seagate's filing of patent

---

[1] The Court previously dismissed Shukh's claims for declaratory judgment regarding the enforceability of an arbitration agreement, rescission, breach of contract, breach of fiduciary duty, unjust enrichment, interference with business expectancy, and declaratory judgment regarding the confidentiality provisions of Shukh's employment contract. (*See* Order on Stipulation of Dismissal, Sept. 14, 2010, Docket No. 40); *Shukh v. Seagate Tech., LLC*, Civ.

(Footnote continued on next page.)

applications from which Shukh alleges he was wrongfully omitted as an inventor. Seagate now moves for summary judgment on Shukh's correction of inventorship and fraud claims. Because no issue of material fact remains, the Court will grant Seagate's motion for summary judgment.

## BACKGROUND[2]

Shukh was employed by Seagate from September 1997 until he was terminated in early 2009. (Fourth Decl. of Elizabeth Cowan Wright, Ex. 1 (Dep. of Alexander Shukh ("Shukh Dep.") 31:3-9), June 29, 2012, Docket No. 316.) Shukh held various positions at Seagate as an engineer involved in the development of magnetic recording heads for hard disk drives. (Shukh Dep. 492:14-493:2; Fourth Decl. of Constantine John Gekas, Exs. 12, 13 at 1, July 20, 2012, Docket No. 324.) Shukh's correction of inventorship and fraud claims that are the subject of the present motion arise out of six issued Seagate patents and four Seagate patent applications on which Shukh alleges he was wrongfully omitted as an inventor. (Shukh Dep. 48:21-50:24; Third Am. Compl. ¶¶ 122, 196, Jan. 17, 2012, Docket No. 268.)

_____

(Footnote continued.)

No. 10-404, 2011 WL 1258510, at *17 (D. Minn. Mar. 30, 2011). Seagate has not moved for summary judgment on Shukh's claims for discrimination and retaliation under Title VII and the Minnesota Human Rights Act. (Third Am. Compl., 59-60, Jan. 17, 2012, Docket No. 268.)

[2] The Court recites the background only to the extent necessary to rule on the instant motion. A more complete recitation of the facts surrounding Shukh's termination and his employment at Seagate appear in the Court's previous orders. *See, e.g.*, *Shukh v. Seagate Tech., LLC*, Civ. No. 10-404, 2011 WL 6003951 (D. Minn. Nov. 30, 2011); *Shukh v. Seagate Tech., LLC*, Civ. No. 10-404, 2011 WL 1258510 (D. Minn. Mar. 30, 2011).

## I.   SEAGATE'S PATENT APPLICATION PROCESS

Shukh's employment with Seagate was governed by an Employment Agreement. (Fourth Gekas Decl., Ex. 9.)  Pursuant to this agreement, Shukh assigned to Seagate his

> right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements or trade secrets, whether or not patentable . . . which [Shukh] may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time [Shukh is] in the employ of the Company.

(*Id.*, Ex. 9 at 2.)   This provision prohibited Seagate employees from filing patent applications for their own inventions.  (*Id.*; *see also* Third Am. Compl. ¶ 107.)  Instead, Seagate employees were required to disclose inventions to Seagate by submitting an Employee Invention Disclosure Form to Seagate's Intellectual Property ("IP") Department.  (Fourth Gekas Decl., Ex. 10.)  The IP Department would then forward the form "to the appropriate Patent Review Board which [would] determine whether the invention w[ould] be pursued as a patent application, protected as a trade secret, or otherwise."  (*Id.*, Ex. 10 at 1.)  If the Patent Review Board determined that an application would be pursued for patenting, Seagate attorneys, with the cooperation of the employee inventor or inventors, would draft and file the necessary patent application.  (*Id.*, Ex. 10 at 1-2.)  Once Seagate decided to file a patent application, every individual who qualified as an inventor under patent law was legally entitled to be named as an inventor on the application.[3]

---

[3] *See Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1553 (Fed. Cir. 1997) ("Title 35 requires that an applicant for a patent disclose the names of all inventors.  The patent statute also authorizes correction of the inventors' names in applications and in patents." (citations omitted)).

## II.    THE DISPUTED PATENTS

Shukh alleges that Seagate wrongfully omitted Shukh as an inventor on six issued patents and four pending patent applications.  With respect to some of the disputed patents, Seagate's IP Department informed Shukh that it had decided not to pursue his inventions for patenting, but filed patent applications that allegedly contained Shukh's inventions and failed to name Shukh as an inventor.  (Fourth Wright Decl., Ex. 4 at 16-17, 19, 23, 26.)  For some of the disputed patents, Seagate's IP Department informed Shukh that although it had decided not to pursue his particular invention for patenting, Shukh's work would be incorporated with other inventions for which Seagate would pursue patenting.  (*Id.*, Ex. 4 at 16-17; Shukh Dep. 719:5-8.)  Seagate did not, however, list Shukh as an inventor in the final patent applications into which Seagate had represented it would incorporate Shukh's work.  (Fourth Wright Decl., Ex. 4 at 16-17.)  With respect to other disputed patents, Seagate did not communicate its intentions regarding Shukh's inventions, but filed patent applications that allegedly contained Shukh's inventions and failed to name Shukh as an inventor.  (*Id.*, Ex. 4 at 20-21.)  Seagate never told Shukh that it had filed applications for any of the disputed patents, or that it had omitted Shukh as a co-inventor on the applications.  (*Id.*, Ex. 4 at 16-17, 20.)  Seagate did, however, present Shukh with inventorship awards, apparently recognizing Shukh for his work on at least two of the disputed patents.  (*Id.*, Ex. 4 at 17, 19; Ex. 5.)

In 2006, while searching the United States Patent and Trademark Office ("USPTO") website, Shukh discovered that he had not been named as an inventor on one of the disputed patents.  (Shukh Dep. 61:6-7; Fourth Gekas Decl., Ex. 13 ¶ 16.)  In July

2007, Shukh discovered the omission of his inventorship on another of the disputed patents. (Fourth Gekas Decl., Ex. 13 ¶ 16.)

On August 30, 2007, Shukh sent an e-mail to Kenneth Massaroni, the Vice President of Seagate's IP Department, notifying Massaroni that Shukh believed he had been wrongfully omitted as an inventor on at least one of the disputed patents. (Shukh Dep. 255:18-24; Fourth Gekas Decl., Ex. 13 ¶ 18; Fourth Wright Decl., Ex. 4 at 8.) Shukh requested that Massaroni correct this omission. (Fourth Wright Decl., Ex. 4 at 18.) In March 2008, Massaroni allegedly responded to Shukh's requests by informing Shukh that the stated inventorship on the disputed patent was correct, because Shukh was not an inventor of the patented invention. (Shukh Dep. 255:18-24; Fourth Gekas Decl., Ex. 13 ¶ 22.) Seagate did not notify the USTPO of Shukh's complaints. (Exs. in Supp. of Pl's Surreply, Ex. C (Dep. of Kenneth M. Massaroni ("Massaroni Dep.") 59:25-60:4), Oct. 23, 2012, Docket No. 360.)[4] After receiving Massaroni's response, Shukh searched the USTPO website for other patents embodying his inventions, and discovered the other disputed patents. (Fourth Gekas Decl., Ex. 13 ¶ 23.) With respect to all of the disputed patents, Shukh testified that upon discovering the patents he knew immediately that the stated inventorship was inaccurate and that Seagate should have listed him as a co-inventor. (Shukh Dep. 250-57.)

---

[4] Shukh filed two sets of exhibits in support of his two surreply briefs, but labeled the exhibits consecutively as a single set. Therefore, where reference is made to "Exs. in Supp. of Pl's Surreply," exhibits A and B can be found at Docket Number 360, filed on October 23, 2012, and exhibits C through P can be found at Docket Number 383, filed on December 14, 2012.

## III. SHUKH'S FRAUD CLAIM

With respect to reliance, Shukh stated that he "truly relied" on the representations of Seagate's IP Department.  (*Id.* 924:18-22.)  But Shukh was unable to testify to any actions he had taken in reliance on Seagate's alleged misrepresentations, or anything he refrained from doing in reliance on Seagate's statement that it would not be pursuing patent applications for Shukh's inventions.  (*Id.* 63:25-64:6; 925:17-25.)

Shukh also submitted expert testimony from Howard Rockman, an intellectual property attorney, in support of his fraud claim.  (Exs. in Supp. of Pl's Surreply, Ex. A.)  For purposes of his opinion, Rockman assumed "that Seagate had knowledge that the documents filed with the USPTO that failed to name Dr. Shukh as an inventor were untrue, and that Seagate purposefully intended to deceive Dr. Shukh that his inventorship interests were being protected."  (*Id.*, Ex. A at 7.)  Rockman then opined that "Dr. Shukh justifiably relied on the [IP] department of Seagate to protect his inventorship interests. . . . As a result of Seagate's failure to protect, or even recognize Dr. Shukh's inventorship rights, Dr. Shukh was injured as to his standing and reputation as an inventor in the technology community to which the subject inventions pertain."  (*Id.*)  Finally, Rockman concluded "it is my opinion that the inequitable conduct of Seagate before the United States Patent and Trademark Office has risen to the level of fraudulent conduct that has injured Dr. Shukh."  (*Id.*)

## IV.    SHUKH'S REPUTATION[5]

Shukh is recognized as one of the leading scientists in his field, and his reputation has been one of an extremely successful innovator in the hard disk drives engineering community. (Fourth Wright Decl., Ex. 4 at 28.) Before joining Seagate, Shukh had over twenty-three years of experience in his field and was "recognized internationally as outstanding in the field of hard disk drive magnetic recording." (Fourth Gekas Decl., Ex. 14.) In 1998, colleagues and peers described Shukh as "an excellent scientist," "an innovative engineer," "an outstanding researcher in th[e] field," "a hard worker," someone with "outstanding capabilities and knowledge of a critical high technology

---

[5] As an initial matter, the parties dispute the types of damages that Shukh seeks in his correction of inventorship and fraud claims. Seagate asked Shukh in an interrogatory to "Separately for each Claim for Relief pled in the Amended Complaint (and any amendments thereto) describe fully and in complete detail all damages that you contend should be awarded to you for that Claim, including the types of damages you contend should be awarded for each Claim, the amount of damages you contend should be awarded for each specific type of damage listed, and the complete factual and legal basis for each specified claim of damages." (Fourth Wright Decl., Ex. 6 at 3.) Shukh responded by incorporating his complaint and the damage computations of his Rule 26(a) disclosure by reference. (*Id.*, Ex. 6 at 4.) In the prayer for relief in his third amended complaint, Shukh seeks an order from the court to correct the inventorship of the disputed patents and "[j]udgment and an award of damages" on his fraud claim. (Third Am. Compl. at 61.) In his Rule 26(a) disclosures, which require "a computation of each category of damages claimed by the disclosing party," Fed. R. Civ. P. 26(a)(1)(A)(iii), Shukh asserted that he would seek "reputational damages" to be "computed on the basis of usual and reasonable royalty rates" for his correction of inventorship claim. (Fourth Wright Decl., Ex. 2 at 5.) In the following paragraph, with respect to "fraud and concealment" Shukh disclosed that "he expect[ed] to seek the same measure of damages." (*Id.*, Ex. 2 at 6.)

Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Shukh did not supplement his Rule 26(a) disclosures or interrogatory answers to reveal damages he intends to seek other than those to his reputation. Therefore, to the extent Shukh's submissions in opposition to summary judgment can be characterized as seeking damages other than reputation damages, the Court will not consider these damages. The only damages Shukh may seek with respect to his correction of inventorship and fraud claims are damages to Shukh's reputation.

area," and one of the "very few people in the world with a solid understanding of this important area." (*Id.*, Ex. 14 at 3, 5-6; *see also id.*, Ex. 16.) Shukh is the author of numerous research papers, has been awarded twenty United States patents and fifteen patents of the former Soviet Union, and is currently listed on several pending patent applications. (*Id.*, Exs. 12, 13 ¶¶ 12-13.)

During his tenure at Seagate, Shukh was named as an inventor on seventeen Seagate patents, and several of his inventions have been incorporated into Seagate products. (Shukh Dep. 415:9-13; Fourth Gekas Decl., Ex. 13 ¶¶ 14-15.) Shukh has also received numerous awards, including awards from Seagate for outstanding achievement and innovation. (Fourth Gekas Decl., Ex. 12 at 2.) One of Shukh's managers, Kenneth Allen, testified that prior to 2005 he viewed Shukh "as an important contributor" to Seagate inventions, and a "[c]lever guy" with "[s]ome very good ideas." (Fourth Decl. of Jeya Paul, Ex. 4 (Dep. of Kenneth D. Allen ("Allen Dep.") 121:17-23), Dec. 21, 2012, Docket No. 386.) Allen also testified that even after the disputed patents became an issue between Shukh and Seagate, Allen viewed Shukh as having "excellent technical skills," and explained that Allen made a special effort to keep Shukh at Seagate because Allen had never "had another employee who generated the amount of trouble who also had enough skills to be worth saving." (*Id.* 162:6-19.)

Shukh's former co-workers testified that, even after Seagate terminated his employment, they held a high opinion of Shukh's reputation as a scientist in his field. (Fourth Paul Decl., Ex. 7 150:18-22, Ex. 8 189:25-190:2.) Two co-workers, who left Seagate to work for Hitachi prior to Shukh's termination, assisted Shukh in applying for various positions at Hitachi. (Fourth Paul Decl., Ex. 6 (Deposition of Vladyslav Vas'ko

("Vas'ko Dep.) 48:6-13); Ex. 7 28:15-20, 150:18-22.)  Vladyslav Vas'ko testified that he was willing to assist Shukh in finding employment because Shukh "is a very qualified engineer, and he is known as one of the best inventors in the hardware industry.  And he contributed a lot to a successful hardware industry in general."  (*Id.* 55:16-24.)  Vas'ko testified that other scientists in the field shared this view of Shukh's reputation. (*Id.* 137:12-24.)  Vas'ko further testified that as of January 2009, he believed Shukh was a "genius" and "prolific inventor" with "an outstanding ability when it came to technological skills."  (*Id.* 138:2-23.)

Shukh's evidence regarding reputation focuses on three issues:  (1) poor performance reviews and the perception at Seagate that Shukh inappropriately took credit for the work of others; (2) the inability to secure other employment after his termination; and (3) the importance to an inventor's reputation of the number of patents to which he is attributed.

### A.     Performance Review

In an August 2007 performance review, evaluating Shukh's performance for the previous year,[6] Allen, noted that Shukh needed to improve his ability to "see[] this design review as part of the team effort and . . . not overly stress that it is his work alone." (Fourth Gekas Decl., Ex. 11 at 1-2.)  Additionally Allen commented:

> [Shukh's] insistence on getting appropriate credit for all design ideas and implementations stifles open discussion and adoption of his ideas.  Since this issue has become more important to [Shukh] as time goes on, and since

---

[6] Allen completed his work on the performance review sometime in July 2007, and the review then would have been sent for approval to another level of management.  The review was likely finalized in the first week of August 2007.  (Allen Dep. 189:19-190:2.)

he believes he has not been fairly recognized for his past contributions, it's an emotional issue. Most unfortunately, it appears to others that Alex is more interested in being right and in getting credit than in ensuring that Seagate wins. [Shukh] will become more effective, and his contributions will increase significantly, if he can find ways to let others see that he truly is interested primarily in Seagate's success, rather than in his own advancement or preventing theirs.

(*Id.*, Ex. 11 at 5.) Allen also gave Shukh unsatisfactory ratings in the "Respect for People" and "Teamwork" categories, explaining:

I do understand [Shukh]'s concerns about credit for past work. He has made a number of contributions over the years, and I have come to see over the past 6 months that he sometimes doesn't receive proper credit for work he has done in the past. What Alex needs to understand is that much of this is self-inflicted. For example, Alex often insists that full design credit be give[n] to modeled optimization of head geometries – clearly, geometries are critical; however, they are not high-level intellectual concepts and generally must be optimized experimentally. He has also repeatedly accused a number of different people of stealing his work – I have learned that several members of the design community now refuse to read his highlights or modeling work; they believe their only defense against accusations of plagiarism is to remain ignorant of his work. If Alex learns to collaborate more effectively, he will become more effective and get more credit for his work because he will be able to leverage the skills and efforts of many others, rather than work in isolation.

(*Id.*, Ex. 11 at 6.) Allen testified that these problems with Shukh's teamwork were prevalent in 2005, and that several of Shukh's previous managers had "a similar set of issues" as those described in Allen's 2007 evaluation. (Allen Dep. 118:16-25, 120:6-16, 121:4-6.) Other Seagate inventors perceived Shukh as quick to accuse others of stealing his inventions, and even refused to attend presentations by Shukh in order to "avoid future accusations of plagiarism." (Shukh Dep. 738:6-12.)

## B. Post-Seagate Employment

Since his 2009 termination, Shukh has submitted 135 job applications, but has been unable to secure employment. (Fourth Wright Decl., Ex. 4 at 31, 37-57.) These applications resulted in only two interviews. (Shukh Dep. 570:20-571:4.) Shukh testified that the hiring manager at Hitachi, a company to which Shukh applied, contacted a Seagate employee to discuss rumors the hiring manager had heard about Shukh. (*Id.* 534:9-21.) Shukh attributes these rumors to a statement made by Massaroni prior to Shukh's termination, wherein Massaroni instructed Shukh to stop talking about his designs, stating "[t]his is your last chance to work at [Seagate], otherwise you will not find a job anywhere." (*Id.* 543:22-544:2.) Additionally, during Shukh's interview at Hitachi, a Hitachi engineer allegedly told Shukh that "[w]ith your reputation you will not find employ[ment] here." (*Id.* 541:23-542:11.)

## C. Number of Patents as Evidence of Reputation

The record also contains evidence that, as a general matter, inventorship on a greater number of patents typically improves an inventor's reputation in his or her field. In statements and recommendations accompanying Shukh's green card application, Seagate and Shukh's scientific peers often referenced Shukh's "numerous publications and patents" as one basis for their conclusion that he was internationally recognized as an outstanding scientist. (Fourth Gekas Decl. Exs. 14-16.) However, Shukh's former co-workers also testified that whether Shukh had "15" "25 or 30" patents would not affect their opinion of Shukh, and they would not think either more or less highly of him

regardless of the number of patents on which he was listed as an inventor. (Vas'ko Dep. 139:17-140:11; Fourth Paul Decl., Ex. 8 189: 15-21, Ex. 9 195:1-4.)

Additionally, in the August 2007 performance review, Allen suggested that the number of patents associated with an inventor is an element of job performance, stating "I am concerned that the number of patent applications has been reduced over the last two years. . . . I'd like to see [Shukh] increase his patent portfolio." (Fourth Gekas Decl., Ex. 11 at 5.) Despite this comment, Allen gave Shukh an Outstanding rating, the highest rating for innovation, a category that evaluates an employee's ability to "seek new ideas . . . welcome change for the opportunities it brings us." (*Id.*) Allen later told Shukh "I'm concerned about the decrease in your patent submissions over the past few years." (Exs. in Supp. of Pl's Surreply, Ex. P at SEA0145382.) Allen testified that his concern about the number of patent applications expressed in both the August 2007 performance review and the follow-up communication was based on the number of inventions Shukh disclosed to Seagate, not the number of Shukh's inventions which were ultimately incorporated into Seagate patent applications. (Allen Dep. 190:5-19, 193:1-25.) Allen further testified that an increase in the number of patent applications submitted by Shukh may have had a positive effect on Shukh's performance at Seagate. (*Id.* 196:3-19.)

Additionally, Shukh submitted two export reports related to reputation. Based on his interactions with inventors during his career as a patent attorney, Rockman stated that "inventors take great pride in their inventorship abilities and accomplishments." (Exs. in Supp. of Pl's Surreply, Ex. A at 7.) Rockman further stated that:

> It is also my understanding that contributions as named inventors on patents [are] considered positively when a technology professional is being considered for a promotion. . . . [B]eing a named inventor on a patent

provides the technology professional with the understanding that the patent symbolizes their inventive achievement, and that their standing and reputation in the related technology community has been enhanced, including among their employers or potential employers, their professional peers in the technology community, and members of their professional societies and organizations. Therefore, it is my conclusion that being named as an inventor in a patent directed to an invention to which they contributed is very important to an inventor.

(*Id.*, Ex. A at 7-8.) With respect to Shukh specifically, Rockman stated "[a]s a result of Seagate's failure to protect, or even recognize Dr. Shukh's inventorship rights, Dr. Shukh was injured as to his standing and reputation as an inventor in the technology community to which the subject inventions pertain." (*Id.*, Ex. A at 7.) Similarly, John Benson, an immigration attorney, indicated that the United States Citizenship and Immigration Services considers the number of patents bearing the inventor's name when determining whether an inventor can be classified as an "outstanding professor or researcher" for purposes of obtaining a green card. (*Id.*, Ex. B at 5.)

### D. Shukh's Deposition Testimony

Finally, Shukh testified at his deposition that his reputation was not harmed. First, Shukh testified that reputation "means how well you're accepted in the scientific society you belong to as a specialist." (Shukh Dep. 241:11-13.) Then Shukh identified the numerous personal qualities which he believed formed his reputation as a scientist. These qualities include honesty, good organization, openness and straightforwardness, communications, good technical abilities, innovation, and extreme competitiveness. (*Id.* 244-48.) Shukh agreed that as of 2002 he had a reputation for all of those qualities. (*Id.* 247:1-8.) Seagate's counsel then asked "[s]o . . . your reputation for each of those personal qualities of honesty, good organization, openness, straightforwardness and

communications, good technical abilities, innovation and extreme competitiveness, did not change from 2002 until today?" to which Shukh responded, "[i]t seems to me it didn't change since 1997 when I joined Seagate up to now." (*Id.* 249:23-250:6.)

## V.    PROCEDURAL HISTORY

The Court has previously considered Shukh's correction of inventorship and fraud claims in the context of arguments almost identical to those made by Seagate in the instant motion.    In 2010, Seagate brought a motion to dismiss Shukh's correction of inventorship and fraud claims, and Shukh also sought partial summary judgment on his claim for correction of inventorship.    (Am. Mot. to Dismiss, May 18, 2010, Docket No. 14; Mot. for Partial Summ. J., Sept. 27, 2010, Docket No. 57.)    On March 30, 2011, the Court issued an order that, among other things, denied Seagate's motion to dismiss Shukh's correction of inventorship and fraud claims and denied Shukh's motion for partial summary judgment.    *Shukh v. Seagate Tech., LLC*, Civ. No. 10-404, 2011 WL 1258510, at *17 (D. Minn. Mar. 30, 2011).

As to the correction of inventorship claim, Seagate argued that Shukh did not have standing to bring a correction of inventorship claim under 35 U.S.C. § 256 because Shukh had no ownership, financial, or reputational interest in the disputed patents.    The Court denied Seagate's motion to dismiss, concluding that Shukh had alleged standing sufficient to survive a motion to dismiss.    *Shukh*, 2011 WL 1258510, at *8.    The Court first determined that pursuant to the employment agreement between Seagate and Shukh, Seagate "is the sole owner" of the patents at issue.    *Id.* at *6.    Therefore the Court concluded that "Shukh cannot derive standing from ownership of the patents."    *Id.*

Additionally the Court found that "the facts in a light most favorable to Shukh provide no possibility that he could have a financial interest in any of the patents at issue." *Id.* at *7. However, the Court went on to consider whether a reputational interest alone is sufficient to confer standing, and reasoned that being

> designated as an inventor of a patent that is widely known in an industry is an important mark of success, and in the Court's view [the Federal Circuit] is correct that pecuniary and reputational consequences could easily flow from being named or omitted as an inventor. Further, Shukh alleges that he has had difficulty finding new employment, and while he attributes some of this to "black-listing" and rumors instigated by Seagate, it is also logical that omission from important patents could affect his ability to get a new job.

*Id.* Thus, the Court found that Shukh's complaint sufficiently alleged "standing to challenge inventorship under [the Patent Act] due to potential harm to his reputational interests," and consequently denied Seagate's motion to dismiss Shukh's correction of inventorship claim. *Id.* at *8.[7]

With respect to Shukh's fraud claim, Seagate argued in its motion to dismiss that Shukh had failed to plead reliance and damages, and had otherwise failed to plead any misrepresentation with particularity. After reviewing the complaint in the light most favorable to Shukh, the Court concluded that Shukh had properly pleaded a material misrepresentation, explaining that

> the complaint may allege that it was a material misrepresentation for Seagate to file various patent applications omitting Shukh as an inventor. It additionally could be a material misrepresentation because according to the complaint and various e-mails, Shukh was informed

---

[7] The Court also denied Shukh's motion for summary judgment on his correction of inventorship claim, finding that although Shukh "has alleged sufficient facts to overcome a motion to dismiss, he has fallen well short of the standard required to be granted summary judgment on the issue of inventorship." *Shukh*, 2011 WL 1258510, at *8.

> that his inventions . . . were to be incorporated into [another invention],
> but he was not listed as an inventor on the final patent application . . . .

*Id.* at *10. With respect to reliance, the Court held that "it can be inferred from the complaint that Shukh relied on Seagate's 'representations' to protect his inventorship rights, that is, the actions of its IP department in receiving and applying for patents, and that he was damaged by doing so." *Id.* at *10. Finally the Court found that "[a]lthough Shukh has not alleged specific damages except as to his reputation," these alleged reputational damages were sufficient to overcome a motion to dismiss. *Id.*

The case is now before the Court on Seagate's motion for summary judgment on Shukh's correction of inventorship and fraud claims.[8]

---

[8] In his initial response brief to Seagate's motion for summary judgment, Shukh argued that summary judgment was premature, because he had not had a fair and adequate opportunity to complete discovery. (Pl's Opp. to Mot. for Summ. J. at 3-8, July 20, 2012, Docket No. 323.) Seagate filed its motion for summary judgment on June 29, 2012, approximately five months before the December 1, 2012 deadline for fact discovery in the case to be completed. (*See* Mot. for Summ. J., June 29, 2012, Docket No. 313; Am. Pretrial Scheduling Order, May 2, 2012, Docket No. 309.) Under Federal Rule of Civil Procedure 56(d) "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The affidavit or declaration must "show[] what specific facts further discovery might uncover." *Roark v. City of Hazen, Ark.*, 189 F.3d 758, 762 (8th Cir. 1999). Pursuant to Rule 56(d), Shukh submitted a declaration identifying co-inventors, Seagate IP Department personnel, and experts whom Shukh would need to depose in order to raise genuine issues of material fact with respect to his claims. (Fourth Gekas Decl., Ex. 5.)

Fact discovery has now closed, and the Court has twice permitted Shukh to file surreply briefs supplementing the record with expert reports and deposition testimony. (Pl's Surreply, Oct. 23, 2012, Docket No. 359; Pl's Second Surreply, Dec. 14, 2012, Docket No. 382.) The Court therefore finds that, even if the summary judgment motion may initially have been premature, a continuance is no longer warranted. At this time, Shukh has had adequate time for discovery, and has had the opportunity to present that evidence in support of his claims. *See Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) ("[S]ummary judgment is proper only after the nonmovant has had adequate time for discovery" (internal quotation marks omitted)). Additionally, the majority of the discovery identified in Shukh's initial Rule 56(d) declaration has now been completed. (*See* Pl.'s Second Surreply at 1-2 ("Plaintiff argued that he intended to

(Footnote continued on next page.)

**ANALYSIS**

## I.	STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

---

(Footnote continued.)

depose several witnesses on essential facts likely relevant to the summary judgment motion. . . . Plaintiff has so done[.]").)   The Court finds that, in the absence of the discovery already completed, the original declaration no longer shows specific facts which further discovery might uncover, and is consequently insufficient to satisfy the standard for a continuance under Rule 56(d).  *See Roark*, 189 F.3d at 762.  Therefore, the Court finds that it is proper to consider the summary judgment motion based on the evidence currently in the record.

## II.     COUNT TWO: CORRECTION OF INVENTORSHIP

Seagate seeks summary judgment on Shukh's correction of inventorship claim, contending that Shukh has no standing, having failed to demonstrate harm to his reputational interests. The Court must determine whether Shukh has presented evidence of damage to his reputation sufficient to confer standing to pursue his correction of inventorship claim.

### A.     Standing Based on Reputational Damage

"Once a patent issues . . . 35 U.S.C. § 256 provides a private right of action to challenge inventorship." *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010). To establish standing to sue under Section 256, a plaintiff must demonstrate (1) an actual or imminent, concrete injury in fact; (2) a causal relationship between the injury and the conduct complained of; and (3) that the injury is capable of being redressed by a decision of the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001) (applying the *Lujan* factors to determine whether a plaintiff had standing to sue under Section 256).

Standing under Section 256 is typically established when a plaintiff has either an expectation of ownership of a patent or a concrete financial interest in the patent. *See Chou*, 254 F.3d at 1358-59. As described above, however, the Court previously determined that, pursuant to his employment agreement, Shukh has no ownership or financial interest in the disputed patents. *Shukh*, 2011 WL 1258510, at *8. Therefore

Shukh's standing to sue for correction of inventorship can only derive from his reputational interests in the disputed patents. *Id.*[9]

Reputational harm may be sufficient to confer standing under Section 256, and flows from the underlying premise that "being considered an inventor of important subject matter is a mark of success in one's field." *Chou*, 254 F.3d at 1359. Therefore, reputational harm may give a plaintiff standing to challenge the omission of inventorship where, for example, the failure to be named as an inventor caused the plaintiff to lose

---

[9] The Court previously determined that Shukh's complaint alleged **potential** harm to his reputational interests sufficient to survive Seagate's motion to dismiss for lack of standing. *Shukh*, 2011 WL 1258510, at *8. Because the Court was determining Shukh's standing in the context of a motion to dismiss, "general factual allegations of [reputational] injury" were sufficient to establish Shukh's standing at that stage of the litigation. *See City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (quoting *Lujan*, 504 U.S. at 561). But "the manner and degree of evidence required" to establish standing changes when the Court considers a motion for summary judgment. *Lujan*, 504 U.S. at 561. "In response to a motion for summary judgment, 'the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence[,] specific facts, which for purposes of the summary judgment motion will be taken as true.'" *City of Clarkson Valley*, 495 F.3d at 569 (quoting *Lujan*, 504 U.S. at 561); *see also Kilper v. City of Arnold, Mo.*, No. 4:08cv0267, 2009 WL 2208404, at *9 (E.D. Mo. July 23, 2009) (considering standing on a motion for summary judgment and requiring "'a factual showing of perceptible harm'" (quoting *Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003)).

"[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley*, 495 F.3d at 569. As such, the Court can consider standing and dismiss a claim at any point in the proceedings when it becomes apparent that a plaintiff lacks standing to bring the claim. *See South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986, 989-91 (8th Cir. 2012); *see also Ark. ACORN Fair Hous., Inc. v. Greyston Dev. Ltd.*, 160 F.3d 433, 434 (8th Cir. 1998) (considering a question of standing on summary judgment). Because standing is a jurisdictional question for the Court, not a jury, the Court must resolve any issues of fact necessary to make a standing determination. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 485 U.S. 59, 72 (1978); *see also United States v. 1998 BMW "I" Convertible*, 235 F.3d 397, 399-400 (8th Cir. 2000). "When standing is challenged on summary judgment, '[t]he court shall [not] grant summary judgment if the movant shows that there is [a] genuine dispute as to any material fact. . . .' Therefore, if there is a genuine issue of material fact, then summary judgment is inappropriate without the district court resolving the factual dispute." *In re ATM Fees Antitrust Litig.*, 686 F.3d 741, 747 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Because the Court ultimately concludes that no genuine issue of material fact remains with respect to Shukh's reputational damage, this case does not require the Court to resolve any factual disputes in order to determine that Shukh lacks standing.

"standing within the scientific community," be denied "the reputational benefits associated with being named as an inventor," and to suffer "a loss of prestige within the scientific community resulting from his inventions being recognized as another's." *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 256 (D. Del. 2006) (internal quotation marks omitted).

It is not enough, however, for a plaintiff to allege a reputational interest in a patent generally, rather, the plaintiff must point to specific facts which demonstrate reputational damage. *See Cole v. Gummow*, No. 3-02-CV-0705, 2003 WL 22455387, at * 3 (N.D. Tex. Oct. 22, 2003) (granting defendant's motion to dismiss a correction of inventorship claim where the only evidence of plaintiff's reputational interest was "his bald assertion that 'I have a reputational interest as inventor of the [patents]'"). These specific facts will often take the form of evidence demonstrating "[p]ecuniary consequences" flowing from the reputational damage that resulted from the failure to be named as an inventor. *See Chou*, 254 F.3d at 1359 (concluding that it "is not implausible" that reputational interest may confer standing under Section 256 because "[p]ecuniary consequences may well flow from being designated as an inventor"). For example, showing that reputational damage has caused the plaintiff to lose employment opportunities may be enough to confer standing. *See Czarnik*, 437 F. Supp. 2d at 256 (denying a motion to dismiss where "[p]laintiff has alleged that he has suffered harm to his reputation and standing in the scientific community. As a result, Plaintiff alleges that he has been unable to secure a

position at a start-up company and earn a salary comparable to his [previous] salary . . . .").[10]

Any pecuniary consequences stemming from reputational damage must be redressable by the court in order to satisfy the requirements of standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). In an action to correct inventorship the court is only empowered to order correction of the patent to reflect the plaintiff's inventorship and cannot alter contractual agreements regarding ownership of the patent. *See* 35 U.S.C. § 256(b). Therefore, where a plaintiff can only rely on reputational interests to form the basis of standing under Section 256 – because he has no ownership or pecuniary interest in the disputed patent – any pecuniary consequences alleged by a plaintiff to have flowed from his damaged reputation cannot be tied to a financial or ownership interest in the patent itself, as the court is powerless to address such consequences. *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327-28 (Fed. Cir. 2009) (distinguishing between "a purely reputational interest" and financial harms associated with a plaintiff's ownership of an inventor such as "the right to license or assign his interest, the right to manufacture, use, and sell the subject matter of the patents to his inventions").

---

[10] *See also Hoang v. Abbott Labs.*, No. 08 C 189, 2009 WL 1657437, at *3 (N.D. Ill. June 12, 2009) (explaining that to show reputational standing, a plaintiff would have to at least allege "that she lost employment opportunities due to her omission from the three patents").

## B. Undisputed Testimony

The Court finds that Shukh has failed to present evidence of reputational damage sufficient to raise a genuine issue of material fact with respect to his standing to pursue correction of inventorship claims for the disputed patents. The record is replete with undisputed evidence that prior to beginning his employment with Seagate, Shukh was internationally recognized as a leading scientist in his field, with a reputation as an extremely successful inventor, named on at least 35 patents. Shukh has not presented evidence that the failure to be named on the six disputed patents[11] damaged his undisputed reputation as a leading scientist in his field. Indeed, Shukh's own deposition testimony reflects the opposite proposition – that his reputation as a leading scientist in his field and an extremely successful inventor was not damaged as a result of Seagate's omission of Shukh as an inventor on six patents. Shukh stated repeatedly in his deposition that his reputation for "honesty, good organization, openness and straightforwardness and communications, good technical abilities, innovation and extreme competitiveness did not change from 2002 until [2012]." (Shukh Dep. 244-

---

[11] In determining whether Shukh has presented evidence of reputational damage sufficient to confer standing, the Court considers only the allegations regarding the six disputed patents, and not the allegations regarding the four disputed patent applications. Unlike Section 256, which expressly authorizes district courts to make changes to inventorship on issued patents, 35 U.S.C. § 116, which governs patent applications, vests authority to make changes to pending applications solely in the Direction of the Patent and Trademark Office. *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010). Therefore, Section 116 "does not provide a private right of action to challenge inventorship of a pending patent application." *Id.* at 1354. The Court would, however, reach the same conclusion on standing even if it considered the patent applications.

50.)[12]    Inventorship may have reputational consequences precisely because being recognized as an inventor on a particular patent may provide the inventor with a reputation for the good communication, organizational skills, innovation, excellent technical skills, and competitive drive that resulted in the patent.  Shukh's testimony establishes that his own reputation for possessing the traits associated with inventorship of a patent that make inventorship a mark of success in a particular field remained unchanged during his tenure with Seagate.  Therefore, the omission of Shukh's name on the six disputed patents could not have damaged his reputation.

The only other evidence in the record directly bearing upon Shukh's reputation as an inventor confirms Shukh's deposition testimony that his reputation as an internationally renowned inventor in his field did not change after he was not named as an inventor on the six disputed patents.  During his tenure at Seagate, Shukh received numerous awards for outstanding innovation.  Shukh's manager, Allen, also regarded Shukh as "an important contributor" to Seagate inventions and having "excellent technical skills," both before and after the six disputed patents were issued.  Multiple former co-workers testified that they consider Shukh to be a very qualified engineer, and

---

[12] Shukh does not contend that his deposition testimony was incorrect, but instead argues that the deposition testimony is irrelevant, as it pertains to "personality traits, [which] although desirable, are not at issue."  (Pl.'s Memo. in Opp. to Summ. J. at 36, July 20, 2012, Docket No. 323.)  Shukh's argument is belied by his own testimony stating that the personality traits of honesty, good organization, openness, straightfowardness and communications, good technical abilities, innovation, and extreme competitiveness are the very traits he considers to comprise a scientist's reputation, or a measure of "how well you're accepted in the scientific society you belong to as a specialist."  (Shukh Dep. 241:11-13.)  If an inventor's reputation is damaged by his omission as an inventor on a patent, it seems that such damage would necessarily be to the inventor's reputation for traits directly associated with inventorship, such as, "good technical abilities," "innovation," and "extreme competitiveness."

one of the best inventors in his field. These co-workers testified that their opinion of Shukh did not change after Seagate terminated Shukh. Indeed two of these co-workers helped Shukh apply for jobs at their company, specifically because they consider him to be a prolific inventor with outstanding technical skills. Additionally, Vas'ko testified that his high opinion of Shukh was shared by other non-Seagate scientists in Shukh's field. The deposition testimony of Shukh, his manager, and his coworkers establishes that Shukh did not lose standing or prestige in his field and did not suffer a loss of reputational benefits associated with inventorship when Seagate omitted Shukh as an inventor on the six disputed patents. Instead, Shukh retained his reputation as a leading inventor in his field with excellent technical skills throughout his employment with Seagate. In light of the deposition testimony of Shukh and his co-workers, none of the other evidence presented by Shukh regarding his performance reviews, his employment prospects after leaving Seagate, or the number of patents attributable to Shukh creates a genuine issue of material fact regarding damage to Shukh's reputation.

### C. Shukh's Other Reputational Evidence

#### 1. Performance Review

Shukh relies upon the August 2007 performance review to support his argument that he suffered reputational damage. Specifically, Shukh argues that he developed a negative reputation for taking credit for work that was not his own, and that this reputation would not have developed had Shukh's work on the six disputed patents been properly attributed to him. In the August 2007 performance review, Allen indicated that Shukh demonstrated unsatisfactory teamwork skills because he "repeatedly accused"

other Seagate employees of "stealing his work." Allen also expressed concern regarding Shukh's "insistence on getting appropriate credit for all design ideas." The performance review does not establish an issue of material fact with respect to damage to Shukh's reputation, because the reputational harm on which Shukh focuses is not the type of reputational harm needed to confer standing to pursue a correction of inventorship claim.

Reputational interest in a patent is based on the understanding that "being considered an inventor of important subject matter is a mark of success in one's field, comparable to being an author of an important scientific paper." *Chou*, 254 F.3d at 1359. Therefore, failure to be named on an important patent could negatively affect a scientist's reputation, as the inventor in question could be considered less innovative, creative, and technically skilled in the absence of inventorship on the patent in question. Subsequent correction of inventorship could redress the reputational damage, as the inventor would be considered more innovative, creative, and technically skilled as a result of being named on the patent.

Shukh is instead describing a reputation for being antagonistic toward his employer and coworkers regarding ownership of patents. Although this reputation may be tangentially related to being named as an inventor on the six disputed patents, the relationship is too attenuated to confer standing because an order from the Court correcting inventorship on the patents would not rehabilitate the reputation Shukh has obtained. In other words, even if the Court corrected inventorship on the six disputed patents, this action would not change Shukh's reputation for "insist[ing] on getting appropriate credit for all design ideas," appearing "more interested in being right and in getting credit than in ensuring that [his employer] wins," and "repeatedly accus[ing]"

others of "stealing his work."[13]  Because this reputational harm cannot be redressed in an

action for correction of inventorship, it cannot confer standing upon Shukh.  *See Chou*,

254 F.3d at 1359 (determining that plaintiff had standing under Section 256 because the

loss of royalty benefits suffered by plaintiff could be redressed by naming her as an

inventor on the disputed patent).[14]

Additionally, even if the type of reputational harm claimed by Shukh was

sufficient to establish standing, the timing of the August 2007 performance review

indicates that Shukh had the reputation described in the review before Shukh ever alerted

Seagate to his concerns about the six disputed patents.  Allen's undisputed testimony

indicates that Shukh had this reputation in 2005, at least a year before Shukh discovered

that he had been omitted as an inventor on the disputed patents.  The performance review

---

[13] Shukh has never alleged that the named inventors on the six disputed patents are not actually inventors of the patents in question.  Rather, Shukh alleges that he should be added as a co-inventor on these patents.  Therefore, correcting inventorship on the six disputed patents would not seem to dispel Shukh's reputation for accusing others of stealing his work in a manner that disrupts effective collaboration.

[14] Shukh also makes a generic allegation that he was passed over for promotions, denied salary raises, bonuses, additional stock options, and inventor awards by Seagate because he was not listed as an inventor on the six disputed patents and because he developed a reputation for antagonism regarding ownership of patents.  The Court finds that these allegations do not raise a genuine issue of material fact with respect to Shukh's reputation for several reasons.  First, most of these allegations – such as the denial of promotions, salary raises, and stock options – are entirely speculative, and Shukh has not identified any particular benefits that he was denied or presented any evidence that denial of those benefits was linked in any way to his omission as an inventor on the six disputed patents.  Second, with respect to some of the allegations – such as bonuses and awards associated with particular inventions – Shukh's argument is belied by the fact that he actually did receive inventor awards and bonuses for some of the disputed patents.  Third, Shukh attributes all of the alleged negative financial consequences to his reputation for taking credit for the work of others.  As explained above, this aspect of Shukh's reputation is irrelevant to standing to pursue correction of inventorship, and, in any case, was well-developed before any conflict over the disputed patents surfaced between Seagate and Shukh.  Finally, Shukh has not presented any evidence that receiving or failing to receive inventorship awards with respect to the disputed patents had any effect on his reputation.

was finalized in early August 2007, and reflected Shukh's work for the previous year, but Shukh did not alert Seagate to his concerns about inventorship on the six disputed patents until August 30, 2007, when he sent an e-mail to Kenneth Massaroni. Therefore Shukh's reputation was not damaged **because** he tried to vindicate his right to be named as an inventor on the six disputed patents. Shukh's reputation for insisting on appropriate credit and accusing others of plagiarism documented in the August 2007 performance review was established prior to the dispute over the six patents, and cannot have been a product of seeking to correct inventorship on those patents or a product of the fact that he was omitted from the patents. Because Shukh's reputation for accusing others of stealing his work and insisting on credit for all of his ideas was established well before the disputed patents became an issue between Shukh and Seagate, the Court finds that any reputational injury claimed by Shukh is not traceable to Seagate's conduct in omitting Shukh as an inventor and therefore cannot confer standing upon Shukh. *See Chou*, 254 F.3d at 1359 (determining plaintiff had standing under Section 256, because the loss of royalties was directly traceable to defendant's conduct in omitting plaintiff as a co-inventor of the patent).

### 2. Post-Seagate Employment

The Court does not consider Shukh's inability to obtain employment after submitting 135 applications to be sufficient evidence of damage to reputation to defeat summary judgment because Shukh has offered no evidence that he has not been hired due to damage to his professional reputation resulting from the failure to be named on the six disputed patents. For example, Shukh has presented no evidence that any of the jobs he

applied for required unique technical skills that Shukh could have demonstrated through named inventorship on the six disputed patents. Indeed, Shukh and numerous Seagate co-workers testified that Shukh's reputation as a leading inventor in his field with excellent technical skills did not change during and after his employment with Seagate.

Instead, Shukh attributes his failure to be hired to blacklisting and rumors instigated by Seagate. Specifically, Shukh references Massaroni's statement to Shukh that "you will not find a job anywhere." In its previous Order, the Court indicated that Shukh's failure to find new employment because of "'black-listing' and rumors instigated by Seagate," was distinct from failure to find new employment as a result of damage to Shukh's reputation because of omission from important patents. *Shukh*, 2011 WL 1258510, at *7. Therefore, Shukh's failure to obtain other employment as a result of rumors instigated by Seagate is irrelevant to the question of whether Shukh's reputation was damaged when he was not named as an inventor on the six disputed patents. Because Shukh has presented no evidence indicating that being omitted from six patents resulted in his inability to find other employment, the Court finds that evidence of Shukh's post-Seagate job applications does not create an issue of material fact with respect to Shukh's reputation.

### 3.     Number of Patents as Evidence of Reputation

The Court also finds that Shukh's general evidence that more patents are typically associated with a better reputation as an inventor, does not create a genuine issue regarding whether Shukh's reputation was damaged by omission as an inventor on the six disputed patents. Although the number of patents attributed to Shukh is one factor which

has contributed to his reputation as an outstanding internal scientist, it is insufficient to demonstrate standing to sue for correction of inventorship for Shukh to allege generally that inventorship on more patents may improve the reputation of an inventor. Shukh has presented no evidence demonstrating how inventorship on the six disputed patents at issue would have altered his own reputation. Rather, the undisputed testimony of three of Shukh's former co-workers establishes that with respect to Shukh specifically, his reputation as an excellent inventor with good technical skills would not have changed whether Shukh was an inventor on 15, 25, or 30 patents.

Shukh's reliance on Allen's statements expressing concern about the number of Shukh's patent submissions is similarly misplaced. Allen clarified in his deposition testimony that he was concerned with the decrease in the number of invention disclosures that Shukh made to Seagate, and not concerned with the decrease in the total number of patent applications filed with the USTPO that listed Shukh as an inventor. Therefore, Allen's statements are irrelevant to the question of whether omission of inventorship on the six disputed patents damaged Shukh's reputation, because Shukh submitted invention disclosures for inventions allegedly embodied in all six of the disputed patents. Moreover, despite the comment about the decrease in Shukh's patent submissions, Allen still gave Shukh an "outstanding" rating for innovation on the performance review section where the comment was made, suggesting that the decrease in patent submissions did not affect Shukh's reputation as an outstanding inventor.

Finally, to the extent Shukh seeks to rely on the expert testimony of Rockman and Benson, the Court finds that, in light of the undisputed evidence that Shukh's reputation as an internationally recognized inventor in his field did not change, neither of these

expert reports creates a genuine issue of material fact as to whether Shukh suffered reputational damage. Rockman's report concludes that when an inventor is named on a patent the inventor's "standing and reputation in the related technology community has been advanced." Rockman also stated, without analysis, that "Shukh was injured as to his standing and reputation as an inventor." Benson concludes generally that the number of patents bearing an inventor's name is considered by immigration officials when determining whether a green card applicant is an outstanding professor or researcher.

The opinions of both experts are essentially "more is better" statements with respect to the relationship between patents and an inventor's reputation. Neither of these opinions raises an issue of material fact with respect to whether Shukh's reputation was affected by Seagate's failure to name Shukh as an inventor on the six disputed patents. Neither expert appears to have reviewed or considered Shukh's professional credentials, Shukh's career, the disputed patents, the importance of the disputed patents to Shukh's field, or the importance of the disputed patents in light of other patents on which Shukh is a named inventor. Additionally, neither expert interviewed Shukh or reviewed Shukh's deposition testimony, indicating that these experts lack the proper basis to opine about Shukh's reputation. *See Sykes v. Napolitano*, 634 F. Supp. 2d 1, 7 (D.D.C. 2009) (determining that expert opinion on a plaintiff's reputation lacked foundation because the expert did "not provide any basis for knowing [plaintiff's] reputation before, or after," the relevant event).[15] Instead, the experts offer only conclusory, general statements about

---

[15] *See also Pfannenstiel v. Osborne Publ'g Co.*, 939 F. Supp. 1497, 1502 (D. Kan. 1996) (finding that affidavits did not raise a genuine issue of fact with respect to reputation where the affiants "had no personal knowledge of plaintiff's reputation").

reputation, which are ultimately insufficient to establish that Shukh actually suffered reputational harm in this case. *See Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1304 (8th Cir. 1993) ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to deny motions for summary judgment."). Finally, the opinions of both experts contradict Shukh's own undisputed deposition testimony that his reputation did not change during his teunure at Seagate. Because the expert opinions are contradicted by the record evidence, they cannot create a genuine issue of material fact with respect to Shukh's reputation. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the [expert] opinion unreasonable it cannot support a jury's verdict.").

Because no issue of material fact remains with respect to Shukh's lack of standing to bring correction of inventorship claims, the Court will grant Seagate's motion for summary judgment as to those claims.

## III. COUNT FIVE: FRAUD

To establish a claim for fraud under Minnesota law, Shukh must prove: (1) a false representation by Seagate of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce Shukh to act in reliance thereon; (4) that the representation caused Shukh to act in reliance thereon; and (5) that Shukh suffered pecuniary damages as a result of the reliance. *See Valspar Refinish, Inc.*

*v. Gaylord's Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). A plaintiff's failure to demonstrate a genuine issue of material fact on even a single element of fraud is sufficient for a court to grant summary judgment in defendant's favor. *See id.* at 368-69

## A.      Characterization of Fraud Claim

As an initial matter, the parties dispute the scope of Shukh's fraud claim. In his complaint, Shukh alleges that Seagate defrauded him "by affirmative acts and by acts of fraudulent concealment" by:

a.     preparing false documents and records that failed to include or list him as an inventor of those inventions;

b.     filing with or submitting to the United States Patent Office falsified documents failing to list Dr. Shukh as an inventor or co-inventor of those inventions, including documents with false oaths;

c.     concealing from Dr. Shukh that he would not be listed as an inventor, and that instead defendants, and Seagate and its IP Agents intended to and in fact did interfere and destroy Dr. Shukh's inventorship rights;

d.     by concealing from Dr. Shukh that the applications and oaths required of him to apply for patents would not be requested from him; and

e.     at least as to the invention patented by Patent No. 7,233,457, and the invention for which defendants and Seagate and its IP Agents filed Application No. 10/881,015 . . . by falsely denying to Dr. Shukh that he was entitled to any inventorship rights to those inventions.

(Third Am. Compl. ¶ 114; *see also id* ¶¶ 132, 148, 168-69, 183-84, 190-91.) Shukh also alleges that Seagate fraudulently concealed the fact that the patent applications were filed, and also the fact that Shukh "had been omitted as a co-inventor in the application[s]." (*Id.* ¶¶ 133, 149.)

In responding to a motion for summary judgment, a plaintiff is only entitled to rely on facts supporting the fraud theory that were pled with particularity in the complaint. *Stowell v. Huddleston*, Civ. No. 09-192, 2010 WL 2733179, at *7 n.12 (D. Minn. July 9, 2010) (declining to consider misrepresentations forming the basis of a fraud claim that were "raised for the first time in response to a motion for summary judgment"). A plaintiff must also identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Therefore, when a defendant moves for summary judgment on a fraud claim and the plaintiff fails to identify evidence supporting a particular fraud theory, even if that theory appears in the complaint, summary judgment on any theories unsupported by the plaintiff is appropriate. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument); *Roders v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine the summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").

Seagate argues that, based upon the allegations in the third amended complaint, Shukh's fraud claim is limited to the allegation that "it was a material misrepresentation for Seagate to file various patent applications omitting Shukh as an inventor."[16] Shukh denied that this was his theory of fraud. Instead, in his opening brief in response to the

---

[16] (Def.s' Memo. in Supp. of Mot. for Summ. J. at 9, 12, June 29, 2012, Docket No. 315.)

current motion Shukh repeatedly[17] explained his theory of fraud as "Seagate falsely told Dr. Shukh that it would not be filing patent applications for his inventions and then did precisely that – filed patent applications for his inventions that omitted him as an inventor – and then concealed those filings from him."[18] The Court concludes that it need not determine if Shukh's theory of his fraud claim was pled with particularity in the third amended complaint, or whether Shukh's claim is limited to Seagate's characterization, because under either version of his fraud claim Shukh has failed to create a genuine issue of material fact with respect to reliance or damages.

---

[17] (Pl.'s Memo. in Opp. to Mot. for Summ. J. at 12-13, July 20, 2012, Docket No. 323.) The Court finds that this is the only fraud theory that Shukh articulated in its opening brief. Shukh exclusively described his fraud claim in this manner, and did so consistently throughout his opening brief. (*See id.* at 16, 17, 19, 21-22, 24-25, 34 ("Seagate repeatedly told [Shukh] that it would not be seeking to patent his inventions, but then did so without ever informing or otherwise notifying him that it had done so.").)

[18] In his second surreply brief, however, Shukh asserted, for the first time, that his fraud claim was based on events occurring after Shukh sent Massaroni the August 30, 2007 e-mail indicating that Shukh believed he had been wrongfully omitted as an inventor on one of the disputed patents. Specifically, Shukh argued that Seagate's failure to notify the USTPO of Shukh's complaint to Massaroni that Shukh was improperly omitted as an inventor on the disputed patent applications was a fraud on the patent office and a fraudulent concealment from Shukh. (Pl's Second Surreply at 5, 8, Dec. 14, 2012, Docket No. 382.) The Court will not consider this claim because Shukh made no mention of these allegations in his initial brief or first surreply brief pertaining to this motion. Additionally these allegations do not appear in Shukh's third amended complaint. *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (explaining that the Federal Rules "do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment"); *Scott v. Wells Fargo Bank, N.A.*, Civ. No. 10-3368, 2011 WL 3837077, at *10 (D. Minn. Aug. 29, 2011) (preventing a plaintiff from relying on four alleged misrepresentations which were not contained in plaintiff's complaint, amended complaint, or previous motions in the case, but were instead raised for the first time "in his opposition to Defendants' motion for summary judgment"); *Plumbers & Pipefitters Local Union No. 630 v. Allscripts-Misys Healthcare Solutions, Inc.*, 778 F. Supp. 2d 858, 882 (N.D. Ill. 2011) (limiting plaintiff's fraud claim to the "actual allegations in the complaint").

## B. Reliance

A plaintiff's detrimental reliance "is an essential element of a common law fraud claim." *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 491 (8th Cir. 2004); *see also Nilsen v. Farmers' State Bank of Van Hook, N.D.*, 228 N.W. 152, 153 (Minn. 1929). "In defending a motion for summary judgment, the nonmoving party must come forward with some evidence demonstrating a genuine issue as to the actual reliance and the reasonableness of the reliance." *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 321 (Minn. 2007). Actual reliance "means that the plaintiff took action, resulting in some detriment, that he would not have taken" if the defendant had not made a misrepresentation, or that plaintiff "failed, to his detriment, to take action that he would have taken" had the defendant been truthful. *Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614 (8th Cir. 2007).

Shukh has presented only two pieces of evidence related to reliance.[19] First, Shukh identifies his deposition testimony in which he stated that he "truly relied" on the representations of Seagate's IP Department. Second, Shukh identifies Rockman's report stating that "Dr. Shukh justifiably relied on the [IP] department of Seagate to protect his

---

[19] Shukh has made other arguments regarding reliance, but these arguments relate only to the **reasonableness** of Shukh's reliance, and not to whether Shukh actually relied. The parties do not dispute that it may have been reasonable for Shukh to rely on the representations of the Seagate IP Department regarding his inventorship rights. *See Berg v. Xerxes-Southdale Office Bldg. Co.*, 290 N.W.2d 612, 616 (Minn. 1980) (describing relevant inquiries in determining whether a plaintiff's reliance was reasonable). Both actual and reasonable reliance are required, however, to maintain a fraud claim. *See Hoyt Props., Inc.*, 736 N.W.2d at 321. Therefore the Court cannot rely upon evidence of whether reliance would have been reasonable to create a genuine issue of material fact with respect to whether Shukh actually took any action or failed to take any action in reliance upon Seagate's alleged misrepresentations.

inventorship interests."[20]   The Court finds that this evidence is insufficient to create a

genuine issue of material fact with respect to reliance, because Shukh has at no time

identified any particular actions he took, or failed to take in reliance either on Seagate's

representation that it would not be filing patent applications for his inventions or

Seagate's filing of patent applications that failed to list Shukh as an inventor.[21]   Shukh

was unable to identify in his deposition, answers to interrogatories, three briefs related to

this motion, or oral argument something that he would have done differently had Seagate

told Shukh that it would file patent applications for his inventions and alerted Shukh that

he would not be listed as an inventor on these applications.   Instead, Shukh has

consistently maintained that if Seagate had told him the truth – that it would be filing

patent applications for his inventions and omitting him as an invention – there was no

---

[20] The Court finds that Rockman's statement additionally fails to create a genuine issue of material fact for all of the reasons outlined in the previous section discussing Rockman's report. Rockman's statement about reliance lacks a factual foundation and is too conclusory to provide a basis to deny Seagate's motion for summary judgment.  *See Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1304 (8th Cir. 1993) ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to deny motions for summary judgment.").   Moreover, Rockman's opinions regarding fraud appear to be little more than legal conclusions, suggesting that the report would be inadmissible.  *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009).

[21] Similarly, the Court finds that Shukh's claims for fraudulent concealment fail for the same lack of reliance.  A fraud theory based on concealment still requires evidence of reliance. Nondisclosure can constitute fraud "when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading."  *L&H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989).  Minnesota has adopted the Restatement in defining the tort of fraudulent nondisclosure. *See id.*   The Restatement explicitly requires reliance for nondisclosure of the type alleged by Shukh.  The Restatement provides that "[o]ne who, having made a representation which when made was true or believed to be so, remains silent after he has learned that it is untrue and that the person to whom it is made is relying upon it in a transaction with him, is morally and legally in the same position as if he knew that his statement was false when made."  Restatement (Second) Torts § 551 (1976).  Because Shukh has demonstrated no evidence of reliance upon Seagate's statements that they would not file patent applications for his inventions, his fraudulent concealment also fails.

action Shukh could or would have taken. It is possible to present a theory of reliance based on the type of misrepresentations that Shukh alleges Seagate made. *See Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 260 (D. Del. 2006) (denying a motion to dismiss a fraud claim which alleged that plaintiff relied upon his employer's concealment of patent applications "by failing to take action to ensure his name was on other patents and applications containing his inventions").[22] However, in the absence of any evidence presented by Shukh that there was some action he did or did not take because of Seagate's misrepresentations, the Court will not speculate as to what his reliance may have been. *See Greeley*, 479 F.3d at 615 (finding that the plaintiff "failed to make a showing of detrimental reliance" because the plaintiff "offered no evidence that he changed his course of conduct or otherwise relied on the" misrepresentations (internal quotation marks omitted)).[23] Therefore the Court concludes that Shukh has failed to put forward evidence creating a genuine issue of material fact with respect to a necessary element of his fraud claim.

## C.    Pecuniary Damages

Finally, the Court concludes that even if Shukh had presented evidence of reliance, he has failed to create a genuine issue of material fact with respect to pecuniary damages,

---

[22] *See also Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1373 (Fed. Cir. 1999) (stating in dicta that inventors relied upon the fraudulent concealment of patent applications because they "did not either seek recognition as inventors on the application or prevent the issuance of the patent with [another scientist] named as the inventor").

[23] *See also In re Digi Int'l, Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1103 (D. Minn. 1998) (finding insufficient evidence of actual reliance where the plaintiff "allege[d] generally that it directly or constructively relied," upon the misrepresentations (internal quotation marks omitted)).

"an essential element of fraud." *Nodland v. Chirpich*, 240 N.W.2d 513, 517 (Minn. 1976). In the Court's previous Order, it determined that the only damages supporting Shukh's fraud claim were potential damages to Shukh's reputation, stating:

> Although Shukh has not alleged specific damage except as to his reputation and various inventorship rights that are in dispute, because the Court finds standing predicated at least in part on Shukh's allegation that his reputational interests were harmed, the Court also finds that Shukh has alleged sufficient facts to overcome a motion to dismiss for failure to state a claim of fraud[.]

*Shukh*, 2011 WL 1258510, at *10. Because the Court has concluded that Shukh has not raised an issue of material fact with respect to damage to his reputation caused by the omission of his name from the disputed patents, he cannot rely on such damages for purposes of allowing his fraud claim to defeat a motion for summary judgment. Therefore, the Court finds that Seagate is entitled to summary judgment on Shukh's fraud claim on this basis as well.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment on Plaintiff's Fraud Claim (Claim Five) and Correction of Inventorship Claim (Claim Two) [Docket No. 313] is **GRANTED**. Count two and count five of Plaintiff's Third Amendment Complaint are **DISMISSED with prejudice**.

DATED: March 25, 2013
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge