# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ALEXANDER M. SHUKH,

               Plaintiff,

v.

SEAGATE TECHNOLOGY, LLC,
SEAGATE TECHNOLOGY, INC.,
SEAGATE TECHNLOGY,
UNKNOWN OWNERS AND
ASSIGNEES, and SEAGATE
TECHNOLOGY, PLC,

               Defendants.

Civil No. 10-404 (JRT/JJK)

**MEMORANDUM OPINION
AND ORDER**

---

Constantine John Gekas, **GEKAS LAW, LLP**, 11 South LaSalle Street, Suite 1700, Chicago, IL 60603; James H. Kaster and Cristina Parra Herrera, **NICHOLS KASTER, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, for plaintiff.

Calvin L. Litsey, Chad Drown, Charles F. Knapp, David J. F. Gross, and Elizabeth Cowan Wright, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402; Sarah E. Benjes, **FAEGRE BAKER DANIELS LLP**, 1700 Lincoln Street, Suite 3200, Denver, CO 80203, for defendants.

In February 2010, Plaintiff Alexander M. Shukh filed this action against Defendants Seagate Technology, LLC, Seagate Technology, Inc., Seagate Technology, and Seagate Technology, PLC (collectively, "Seagate"), alleging numerous claims arising out of Seagate's employment and termination of Shukh. After a year of litigation, six of Shukh's thirteen claims survived a motion to dismiss, and the Court allowed Shukh's claims based on correction of inventorship for six United States patents, fraud, and

employment discrimination to go forward.  The parties then served expert reports related to Shukh's alleged damages and his claims that he invented certain patented items while working for Seagate.

In December 2012 and January 2013 Shukh served thirteen subpoenas on two of Seagate's experts – Dr. Christopher H. Bajorek and Ms. Angela Heitzman – and other third parties, seeking discovery related to testimony given by Dr. Bajorek and Ms. Heitzman in other matters as well as information about Dr. Bajorek's interactions with his past employers.  Seagate moved for a protective order with respect to five of these subpoenas as well as a request for documents under Federal Rule Civil Procedure 34.  United States Magistrate Judge Jeffrey J. Keyes granted Seagate's motion, finding that the discovery sought by Shukh's subpoenas and Rule 34 request was not relevant to the issues remaining in Shukh's case and exceeded the bounds of appropriate expert discovery.  Shukh objects to the Magistrate Judge's entry of a protective order requiring Shukh to withdraw the challenged subpoenas and Rule 34 request.  Shukh also brings a separate motion to exclude the expert report and testimony of Dr. Bajorek.

The Court will affirm the Magistrate Judge's decision to grant a protective order, because the determination that the information sought is not relevant and is outside the scope of appropriate expert discovery was neither clearly erroneous nor contrary to law.  Additionally, the Court will deny Shukh's motion to exclude the report and testimony of Dr. Bajorek because Seagate's failure to initially disclose other cases in which Dr. Bajorek provided expert testimony was timely corrected and harmless.

# BACKGROUND[1]

In 1997 Shukh left Belarus, his country of national origin, to work for Seagate. (Third Am. Compl. ¶¶ 22-23, 33, 49-50, Jan. 17, 2012, Docket No. 268.)  Shukh was employed by Seagate from September 1997 until he was terminated in early 2009. (Fourth Decl. of Elizabeth Cowan Wright, Ex. 1 (Dep. of Alexander Shukh ("Shukh Dep.") 31:3-9), June 29, 2012, Docket No. 316.)  Shukh held various positions at Seagate as an engineer involved in the development of magnetic recording heads for hard disk drives.  (Shukh Dep. 492:14-493:2; Fourth Decl. of Constantine John Gekas, Exs. 12, 13 at 1, July 20, 2012, Docket No. 324.)  During his tenure at Seagate, Shukh was named as an inventor on seventeen Seagate patents, and several of his inventions have been incorporated into Seagate products.  (Shukh Dep. 415:9-13; Fourth Gekas Decl., Ex. 13 ¶¶ 14-15.)  Shukh's claims in the present litigation arise primarily out of his alleged uncredited invention of several Seagate patents and the circumstances surrounding his termination.  (Shukh Dep. 48:21-50:24; Third Am. Compl. ¶¶ 122, 196.)

---

[1] The Court recites the background only to the extent necessary to rule on the instant motion.  A more complete recitation of the facts surrounding Shukh's termination and his employment at Seagate appear in the Court's previous orders.  *See, e.g.*, *Shukh v. Seagate Tech., LLC*, Civ. No. 10-404, 2013 WL 1197403 (D. Minn. Mar. 25, 2013); *Shukh v. Seagate Tech., LLC*, Civ. No. 10-404, 2011 WL 6003951 (D. Minn. Nov. 30, 2011); *Shukh v. Seagate Tech., LLC*, Civ. No. 10-404, 2011 WL 1258510 (D. Minn. Mar. 30, 2011).  A more thorough description of the subpoenas and the discovery dispute at issue in the present motion can be found in the transcript of the proceedings held before the Magistrate Judge.  (Tr., Jan. 24, 2013, Docket No. 409.)

## I.   SEAGATE'S EXPERT REPORTS

After a year of litigation, six of Shukh's thirteen claims survived a motion to dismiss, and this Court allowed Shukh's claims for correction of inventorship of six United States patents, fraud based on misrepresentations about whether Shukh's alleged inventions would be the subject of Seagate patents, national origin discrimination, and retaliation to go forward.  *Shukh v. Seagate Tech., LLC*, Civ. No. 10-404, 2011 WL 6003951 (D. Minn. Nov. 30, 2011).  Pursuant to an amended scheduling order, Seagate disclosed expert reports from Dr. Christopher H. Bajorek and Ms. Angela Heitzman related to these claims on November 30, 2012.  (Am. Pretrial Scheduling Order, May 2, 2012, Docket No. 309.)

### A.   Dr. Bajorek

Seagate retained Dr. Bajorek as a rebuttal expert to provide opinions relating to the inventorship of the United States patents at issue.  (Decl. of Christopher H. Bajorek ¶ 1, Jan. 10, 2013, Docket No. 394.)

On November 30, 2012, Seagate served Shukh with Dr. Bajorek's rebuttal expert report.  (*See* Fifth Decl. of Constantine John Gekas, Ex. 7, Jan. 16, 2013, Docket No. 402.)  The report failed to list the three cases in which Dr. Bajorek had previously been retained as an expert, as required by Federal Rule of Civil Procedure 26(a)(2)(B)(v). (*See* Fifth Gekas Decl., Ex. 5.)  On December 5, 2012, Seagate amended its disclosures to correct a mislabeling of one copy of Dr. Bajorek's report as non-confidential.  (*Id.*,

Ex. 8.)  On December 21, 2012, Seagate sent Shukh an electronic version of the relabeled report.  (*Id.*, Ex. 9.)[2]

On January 2, 2013, after discovering the omission of the cases in which Dr. Bajorek had previously been retained as an expert, Seagate supplemented Dr. Bajorek's report with an addendum listing the three cases.  (*Id.*, Ex. 15; Second Decl. of Calvin L. Litsey ¶¶ 3-4, Feb. 15, 2013, Docket No. 424.)  Seagate's January 2, 2013 letter accompanying the addendum stated that the addendum had been omitted "inadvertently."  (Fifth Gekas Decl., Ex. 15; *see also* Second Litsey Decl. ¶ 2.)  The addendum was served within the window for expert discovery, which was scheduled to close February 1, 2013.  (Am. Pretrial Scheduling Order.)  Additionally, Seagate disclosed the list of Dr. Bajorek's previous cases before Dr. Bajorek's deposition, which occurred on January 24, 2013.  (Fifth Decl. of Jeya Paul, Ex. 8, Feb. 15, 2013, Docket No. 425.)  Shukh did not seek an extension of time for discovery based on the delayed disclosure of Dr. Bajorek's previous expert cases.  Shukh did, however, ask questions at Dr. Bajorek's deposition related to the cases disclosed on January 2, 2013.  (*Id.*, Ex. 8 at 19-34, 67-90, 101-04.)

---

[2]  Shukh refers to each of these submissions as a different "version" of Dr. Bajorek's report, in an attempt to show intentional concealment of information by Seagate, but he has not identified any aspect of the December 5 or 21 reports that was different from the originally served report other than the confidentiality designation.

### B.    Heitzman

Seagate retained Ms. Heitzman as an expert to render an opinion on the nature and extent of Shukh's damages.  In particular, Shukh claims as part of this lawsuit that he was damaged by Seagate's conduct in terminating his employment and allegedly blacklisting him, because he was unable to secure other, comparable employment.  (*See, e.g.*, Third Am. Compl. ¶¶ 259-262.)   Ms. Heitzman's expert report examined whether Shukh engaged in an effective job search after Seagate terminated his employment.  (Eighth Decl. of Constantine John Gekas, Ex. 3 at 5, Apr. 19, 2013, Docket No. 482.)   After reviewing Shukh's qualifications, the efforts he undertook to find employment, and available jobs, Ms. Heitzman concluded that "Dr. Shukh's job search effort was not reasonable," and had he "engaged in a reasonable job search, he should have been able to locate employment paying at a similar rate to his Seagate earnings within 6-12 months of his layoff." (*Id.*, Ex. 3 at 18.)

Heitzman's report also included the disclosures required of expert witnesses by Federal Rule of Civil Procedure 26(a)(2), including a list of cases from the past four years in which Heitzman had given either in court or deposition expert testimony.  (*Id.*, Ex. 1 at 14-15.)

## II.    SUBPOENAS AND MOTION FOR PROTECTIVE ORDER

After receiving Seagate's expert reports, Shukh served thirteen subpoenas and a document request under Rule 34, directed at obtaining extensive amounts of information regarding Dr. Bajorek's and Ms. Heitzman's backgrounds as well as their prior expert

opinions in unrelated cases. Five of those subpoenas and the Rule 34 request, described below, are the subject of the current objections.

After the disclosure of expert testimony, Shukh learned that Dr. Bajorek and IBM, one of Dr. Bajorek's previous employers, had been involved in a dispute in 1996 regarding Dr. Bajorek's exercise of certain stock options. (Decl. of Christopher J. Bajorek ¶ 19, Jan. 10, 2013, Docket No. 394.) Dr. Bajorek sought a declaratory judgment that he was in compliance with IBM's stock option agreement after he began working for a different company. (*Id.*) IBM then sued Dr. Bajorek for breach of contract and fraudulent misrepresentation. (*Id.*) Both cases settled on confidential terms. (*Id.*) The IBM cases regarding the stock options did not involve patents or technical subject matter, and Dr. Bajorek provided no expert opinions in those cases. (*Id.* ¶ 20.) On December 17, 2012, Shukh, believing the IBM cases to be relevant for impeachment purposes, served a subpoena on IBM requesting any and all documents related to the lawsuits between IBM and Bajorek that resulted from the dispute over stock options. (Sixth Decl. of Elizabeth Cowan Wright, Exs. B, D, Jan. 10, 2013, Docket No. 392.)[3]

On December 18, 2012, Shukh also served a subpoena on Intematix, another of Dr. Bajorek's former employers, seeking "[a]ll documents, [electronically stored information] and/or other things relating to or pertaining in any way to any and all personnel files of Dr. Christopher H. Bajorek, including anything related or pertaining in any way whatsoever to his hiring and/or termination." (Sixth Wright Decl., Ex. C at 6.)

---

[3] Shukh served an amended subpoena on IBM seeking the underlying stock option agreements, but later withdrew the request. (*See* Sixth Wright Decl., Exs. D, O.)

Intematix develops technology that is unrelated to the technical subject matter of Shukh's patent-based claims in the present case. (Bajorek Decl. ¶ 22.)

On December 28, 2012, Shukh served a subpoena on Dr. Bajorek seeking documents related to the IBM cases and their settlement. (Bajorek Decl., Ex. C at 6-7.) Specifically, the subpoena sought copies of all stock option agreements with IBM, all documents related to the cases or their settlement, transcripts of any depositions given by Bajorek related to the cases and accompanying exhibits, and any "declarations, affidavits or other statements, sworn or unsworn, and all exhibits thereto, given by Dr. Bajorek" in the IBM cases. (*Id.*, Ex. C at 7.) Additionally, the December 28 subpoena requested a variety of documents related to other cases in which Dr. Bajorek had been retained as an expert. (*Id.*) The subpoena sought all reports authored by and all depositions given by Dr. Bajorek in the *Marvell* case, in which Dr. Bajorek was retained as an expert to supply opinions on the hard disk drive sales cycle and supply chain, as well as standard business practices in the field. (*Id.* ¶ 15, Ex. C at 7.) In *Marvell*, the district court precluded Dr. Bajorek from testifying about signal processing and sequence detection technology, technology which is not involved in the present case. (*Id.* ¶ 16.) The subpoena also broadly requested "[a]ny and all expert or other types of reports rendered at any time by Dr. Bajorek in any cases, arbitration or other proceedings" as well as deposition transcripts from any such cases. (*Id.*, Ex. C at 7.)

On January 4, 2013, Shukh served a Rule 34 request on Seagate seeking "all files, records, documents, [electronically stored information] and any other things of any kind relating or pertaining in any way to" expert reports or testimony of Dr. Bajorek in two

cases – *Siemens* and *Western Digital* – in which Seagate was a party.  (Sixth Wright Decl., Ex. E at 6-7.)  Dr. Bajorek provided expert testimony about damages in *Siemens* and trade infringement in *Siemens* on behalf of Seagate.  (Bajorek Decl. ¶¶ 7, 11.)  Dr. Bajorek did not provide expert testimony on patent inventorship, patent infringement, or patent invalidity in either case.  (*Id.*)

After serving the Rule 34 request, on January 7, 2013, Shukh served a subpoena on the American Arbitration Association ("AAA") seeking "the entire case file" for the arbitration relating to the trade secrets *Western Digital* case, including

> all filings, exhibits, transcripts, and recordings in that proceeding as well as all documents, electronically stored information, and other things of any kind whatsoever relating or pertaining in any way to the Arbitration that are in your possession, custody or control, including but not limited to any reports, transcripts of testimony, motions, briefs or other things related in any way to Dr. Christopher H. Bajorek, who was supposedly an expert for SEAGATE TECHNOLOGY LLC.

(Sixth Wright Decl., Ex. F at 6-7.)

Finally, of relevance to the present objections, Shukh served a subpoena on Ms. Heitzman on January 4, 2013.  (Decl. of Angela Heitzman, Ex. B, Jan. 10, 2013, Docket No. 393.)  The subpoena sought "[a]ll documents . . . relating or pertaining in any way to" four presentations given by Ms. Heitzman in 2011 and 2012.  (*Id.*, Ex. B at 6-7.)  This request was duplicative of a subpoena issued to the International Association of Rehabilitation Professionals, Inc. ("IARP") that was not challenged.  (Sixth Wright Decl., Ex. G.)  With respect to Ms. Heitzman's prior expert testimony, the January 4 subpoena requested all reports rendered and transcripts of any testimony given in *Kenyata Woods*, a case involving allegations of employment discrimination.  Additionally the subpoena

sought a list of cases in which Ms. Heitzman had testified in court as an expert witness, any and all reports or testimony given in cases in which Ms. Heitzman had opined on the reasonableness of a job search, and any reports in any type of contested proceeding in which Ms. Heitzman was retained by Faegre & Benson LLP, Baker Daniels LLP, and/or Faegre Baker Daniels LLP.  (Heitzman Decl., Ex. B at 7.)

Seagate moved for a protective order with respect to these five subpoenas pursuant to Federal Rules of Civil Procedure 16 and 26.  (Mot. for Protective Order, Jan. 10, 2013, Docket No. 388.)  Specifically Seagate requested a protective order requiring Shukh to withdraw: (1) the December 17, 2012 subpoena to IBM as amended by a December 19, 2012 subpoena; (2) the December 18, 2012 subpoena to Intematix; (3) the December 28, 2012 subpoena to Dr. Bajorek; (4) the January 7, 2013 subpoena to the AAA; and (5) the January 4, 2012 subpoena to Ms. Heitzman.  (*Id.* at 2.)  Seagate also requested that it not be required to produce documents pursuant to Shukh's Rule 34 request regarding Dr. Bajorek's previous expert reports and testimony.  (*Id.*)  Seagate argued that the information Shukh sought was irrelevant and imposed an undue burden on the parties to whom the subpoenas were served.

## III.    THE MAGISTRATE JUDGE'S RULING

On January 18, 2013, the Magistrate Judge held a hearing on Seagate's motion for a protective order, and granted the motion in part,[4] requiring Shukh to withdraw the five

---

[4] The Magistrate Judge denied Seagate's request to issue an order barring Shukh from serving any additional written expert discovery without express leave of the Court.  (Tr. at 46,

(Footnote continued on next page.)

subpoenas described above.   (Minute Entry, January 18, 2013, Docket No. 405; Protective Order at 2, Jan. 18, 2013, Docket No. 407.)  Additionally, the Court ordered that Seagate did not need to produce documents pursuant to Shukh's Rule 34 request. (Protective Order at 2.)

The Magistrate Judge began by noting that the Court had the authority to require Shukh to order that the subpoenas be withdrawn under Federal Rule of Civil Procedure 26(c), allowing the Court to issue protective orders; Federal Rule of Civil Procedure 26(b)(2), vesting the court with authority to limit the frequency or extent of discovery otherwise allowed by the Rules; and Federal Rule of Civil Procedure 16(a)(3) empowering the court to manage the scope of discovery on its own.  (Tr. at 37, Jan. 24, 2013, Docket No. 409.)  Additionally, with respect to expert testimony, the Magistrate Judge noted that the Federal Rules "contemplate only limited discovery," with respect to experts, and limit discovery related to impeachment to "events giving rise to the litigation at hand and the opinions to be received in evidence during that litigation."  (Tr. at 38.)

With respect to the discovery sought regarding Dr. Bajorek's testimony in the *Western Digital*, *Marvell*, and *Siemens* cases the Magistrate Judge determined that the issues involved in those cases were not closely related to the issues upon which Dr. Bajorek was retained to testify in the present case and therefore concluded that "the

---

(Footnote continued.)

Jan. 24, 2013, Docket No. 409.)  The Magistrate Judge also denied as moot Seagate's request that Shukh compensate Dr. Bajorek and Ms. Heitzman for time spent responding to the challenged subpoenas.  (Tr. at 46-47.)

information being sought is simply too collateral to and outside the bounds of appropriate expert discovery that would be involved in this case." (Tr. 41-42.)

As for the dispute over stock options involving IBM, the Magistrate Judge found that "there is nothing to indicate that there is anything having to do with that stock option dispute that goes to Dr. Bajorek's qualifications as an expert in this case." (Tr. 43.) Although the lawsuit filed by IBM against Dr. Bajorek had contained some allegations of fraud, the Magistrate Judge determined that the fraud allegations were too "far removed" as a topic of impeachment to constitute appropriate expert discovery. (Tr. 43.) Similarly, the Magistrate Judge found that the request for the personnel files from Dr. Bajorek's employment at Intematix

> is an example of a situation where an attempt is made, in fact, to engage in a fishing expedition to try to find information that may be used to impeach Dr. Bajorek but . . . there is no threshold showing to be made that would permit this type of discovery at this stage in the litigation before a deposition even has been taken of Dr. Bajorek.

(Tr. 43.)

Finally, the Magistrate Judge considered the subpoena served on Ms. Heitzman requesting a list of every case in which she testified as an expert. The Magistrate Judge began by noting that Ms. Heitzman's expert disclosures complied with the Federal Rules, which require experts to disclose "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). The Magistrate Judge then concluded that "[t]here has been no threshold showing made that would warrant discovery beyond . . . that of disclosure that went with the report," and declined to permit such discovery at this stage in the litigation. (Tr. 44.)

Consequently, the Magistrate Judge ordered Shukh to withdraw the five challenged subpoenas as well as his Rule 34 request for documents. (Tr. 45-46; Protective Order at 2.)[5]

## ANALYSIS

## I.   OBJECTIONS TO GRANT OF PROTECTIVE ORDER

### A.   Standard of Review

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). This Court will reverse such an order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn*, 254 F.R.D. 554, 556 (D. Minn. 2008) (internal quotation marks omitted).

---

[5] After the Magistrate Judge granted Seagate's protective order, this Court granted summary judgment in Seagate's favor on Shukh's claims for fraud and correction of inventorship. (Mem. Op. & Order, Mar. 25, 2013, Docket No. 439.)

## B.     Standing

Shukh objects to the Magistrate Judge's order on the basis that Seagate lacked standing to challenge the subpoenas.  First, Shukh argues that Seagate lacked standing because its motion for a protective order was essentially a motion to quash the subpoenas.  Second, Shukh argues that the subpoenas were not served on Seagate, and therefore Seagate is not a "party or any person from whom discovery is sought," and cannot bring a motion for a protective order pursuant to Rule 26(c).

Federal Rule of Civil Procedure 45 provides that "the issuing court must quash or modify a subpoena that" among other things "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3).  Under this Rule, parties to whom subpoenas are not directed lack standing to quash or modify such subpoenas on the basis that the subpoenas impose an undue burden.  *See, e.g.*, *W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 16 (D.D.C. 2011) (explaining that the party receiving the subpoena is the proper party to raise a challenge based on undue burden); *Malibu Media, LLC v. Johns Does 1-15*, Civ. No. 12-2077, 2012 WL 3089383, at *8 (E.D. Pa. July 30, 2012) ("First, and fatal to this claim, Defendant is not faced with an undue burden because the subpoena is directed at the internet service provider and not the Defendant.  It is the service provider that is compelled to disclose the information, and thus, its prerogative to claim an undue burden.  In this case, there is no burden on Defendant to produce **any** information." (internal citations omitted) (emphasis in original)).  Because Seagate was not the subject of the challenged subpoenas Shukh is correct that Seagate would have lacked standing to bring a motion to quash.

But Seagate did not bring a motion to quash; instead it sought a protective order pursuant to Rules 16[6] and 26. Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). The Rule also provides the Court with the authority to issue "for good cause . . . an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "The explicit mention of 'a party' in the rule has been interpreted to provide standing for a party to contest discovery sought from third-parties." *Underwood v. Riverview of Ann Arbor*, No. 08-CV-11024, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008); *see also Fleet Bus. Credit Corp. v. Hill City Oil Co.*, No. 01-2417, 2002 WL 1483879, at *2 (W.D. Tenn. June 26, 2002) ("Many district courts have acknowledged [Rule 26(c)] allows a party to file a motion for protective order on behalf of a non-party.").

The Court finds that the Magistrate Judge correctly concluded that Seagate had standing to bring a motion for a protective order pursuant to Rule 26. Although the relief obtained by Seagate in its motion for a protective order is similar to the relief that could have been obtained by the individuals and entities named in the subpoenas had they brought motions to quash under Rule 45, courts have recognized an important distinction between requests to quash a subpoena and motions for protective orders requesting the court to control discovery more generally under Rules 16 and 26. *See Underwood*, 2008

---

[6] Because the Court concludes that Seagate's motion for a protective order was properly brought pursuant to Rule 26 and the Magistrate Judge correctly granted the motion pursuant to that Rule, it need not consider whether Rule 16 would have provided adequate authority for either Seagate's motion or the Magistrate Judge's ruling.

WL 5235992, at *1-2 (E.D. Mich. Dec. 15, 2008).  The mere fact that subpoenas are the type of discovery at issue does not limit parties and the court to the relief provided for in Rule 45.  Instead subpoenas issued under Rule 45 are subject to the same "constraints that apply to all of the other methods of formal discovery."  *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 443 (D. Minn. 1997) (applying the time limits of Fed. R. Civ. P. 26(a)(5) to subpoenas issued under Rule 45).  Rule 26, for example, provides the constraint that discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  The Rule also provides that the court "on motion or on its own . . . must limit the frequency or extent of discovery otherwise allowed" by the Rules if "the discovery sought is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).  Where a party, such as Seagate, contends that subpoena requests are irrelevant, cumulative, and burdensome, they are not simply asserting the rights of the third party, but their own right to reasonable discovery and efficient disposition of the case.  *See* Fed. R. Civ. P. 1. ("These rules . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").  Furthermore, unlike undue burden, which is a fact potentially best known to the party receiving the subpoena, Seagate, as a party to the present litigation, is the only entity as between itself and third parties with the appropriate knowledge to assert an objection based on relevance or cumulative discovery.  Therefore, where a party does not seek to quash a subpoena under Rule 45(c) "the issue is not one of privity between a party and the subpoenaed third-person, but is one of case management

under Rules 16 and 26." *Marvin Lumber*, 177 F.R.D. at 444.  Because the Court finds that Seagate is entitled, as a party to the litigation, to limit irrelevant and cumulative discovery, the Court concludes that the Magistrate Judge did not err in finding that Seagate had standing to bring its motion for a protective order.[7]

### C.    Burden of Proof

Shukh also objects to the Magistrate Judge's ruling on the basis that the Magistrate Judge applied the wrong burden of proof.  Specifically, Shukh argues that the Magistrate Judge imposed upon him the burden of making a threshold showing of relevance rather than requiring Seagate to demonstrate good cause for the issuance of the protective order.

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Under this rule, the movants bears the burden of demonstrating the necessity of a protective order.  *See Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 2012 (8th Cir. 1973).  However, "a showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)."  *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994).   Information is generally discoverable "unless it is clear that the

---

[7] Shukh also objects to the Magistrate Judge's ruling on the ground that the court lacked jurisdiction over three of the subpoenas issued by courts outside the District of Minnesota and that Seagate waived its right to challenge the subpoenas by failing to do so within the fourteen days after service provided by Fed. R. Civ. P. 45(c)(2)(B).  Both of these objections are premised on Shukh's mistaken belief that the Magistrate Judge entered the protective order pursuant to Rule 45, rather than Rule 26.  Because the Court has concluded that the Magistrate Judge properly considered Seagate's motion as one for a protective order under Rule 26, it will overrule Shukh's objections.

information sought has no bearing upon the subject matter of the action." *Sinco, Inc. v. B&O Mfg., Inc.*, Civ. No. 03-5277, 2005 WL 1432202, at *1 (D. Minn. May 23, 2005). The Eighth Circuit has held that the proponent of the discovery must make a "threshold showing of relevance . . . before parties are required to open wide the doors of discovery," in order to limit "fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

In its brief in support of its motion for a protective order, Seagate advanced numerous arguments that the discovery sought by Shukh in the subpoenas was irrelevant to any claim or issue in the case. Shukh was therefore required to make some threshold showing that the material was relevant. Having failed to do so, the Magistrate Judge properly concluded that the irrelevancy of the information sought satisfied the good cause requirement of Rule 26(c).

Additionally, even if the Magistrate Judge had failed to apply the burden of proving entitlement to a protective order appropriately, the Court would affirm his order, because the Magistrate Judge had the authority to require Shukh to withdraw the subpoenas under Rule 26(b)(2)(C), another rule explicitly invoked in Seagate's motion. (Br. in Supp. of Mot. for Protective Order at 3, Jan. 10, 2013, Docket No. 391.) Rule 26(b)(2)(C) requires the court "[o]n motion or on its own" to "limit the frequency or extent of discovery otherwise allowed by" the Rules if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). As explained more fully below, Shukh sought vast quantities of information that relate only tangentially to resolution of any of the issues in the case. The Magistrate Judge would

therefore have been well within his authority to limit the discovery sought in Shukh's subpoenas, even if Seagate had failed to make a showing of good cause.

### D.      Relevance

Finally, Shukh objects to the Magistrate Judge's determination that the information sought in the subpoenas was irrelevant, arguing that the Magistrate Judge applied an inappropriately restrictive standard of relevancy as it related to Seagate's experts.   Specifically, Shukh argues that the Magistrate Judge erred by finding that information pertaining to experts that was outside the scope of initial disclosures required of experts under Rule 26(a)(2) was automatically irrelevant.

As an initial matter, the Court reiterates that its review of the protective order is not *de novo*.   The Magistrate Judge has broad discretion to supervise the discovery matters before him.  *See McGowan v. Gen. Dynamics Corp.*, 794 F.2d 361, 363 (8th Cir. 1986).   Where a magistrate judge has carefully examined the proposed discovery, the Court will defer to the magistrate judge's "broad discretion . . . to manage and define appropriate discovery" unless the Magistrate Judge's determinations were clearly erroneous or contrary to law.  *Williams v. Ehlenz*, Civ. No. 02-978, 2004 WL 742076, at *3 (D. Minn. Mar. 30, 2004).

The Court concludes that the Magistrate Judge did not clearly err in determining that the information Shukh sought in the subpoenas was irrelevant.   Like all other discovery, information sought in connection with expert testimony must be relevant to the claim or defense.  *See* Fed. R. Civ. P. 26(b)(1).   Rule 26 specifically provides for

certain disclosures that must be made regarding an expert witness such as "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). But any information sought above and beyond the required disclosures must meet the Rules' requirement of relevance in order to be discoverable. *See Hofer*, 981 F.2d at 380 (affirming denial of motion to compel where plaintiff sought detailed design plans and "minutiae" for models of trucks that were sufficiently dissimilar from the model in issue such that plaintiff did not make threshold showing of relevance to warrant production of the design plans); *see also United States v. Morse*, Civ. No. 07-226, 2007 WL 4233075, at *2 (D. Minn. Nov. 28, 2007) (upholding the magistrate judge's refusal to compel the disclosure of certain evidence because the party seeking the discovery had not demonstrated relevance, and in his appeal stated only that "such evidence is relevant and material to the charge and elements of fraud").

As to information about Dr. Bajorek's stock options dispute with IBM and his employment at Intematix, the Court finds that the Magistrate Judge did not clearly err in requiring Shukh to withdraw his subpoenas. It was not clear error to determine that Dr. Bajorek's personnel files and information about previous lawsuits that occurred in 1996 would not have bearing on his expert testimony about the inventorship of the patents on which Shukh allegedly was not named. Shukh makes only general arguments that Dr. Bajorek's personnel file and previous lawsuit containing allegations of fraud are relevant for impeachment purposes. Shukh's interpretation of relevance is far too broad, and would allow unbounded discovery into any and all aspects of Dr. Bajorek's life that

could possibly bear on his truthfulness.  Shukh has demonstrated no connection between Dr. Bajorek's personnel file or the dispute with stock options that bears directly upon the issues presented in this case.

With respect to the information sought about Dr. Bajorek's previous expert testimony in *Marvell*, *Siemens*, and *Western Digital*, the Court finds that the Magistrate Judge did not err in concluding that Shukh failed to make a threshold showing of relevance.  Shukh argues only generally that "Dr. Bajorek's prior testimony concerned various technical features concerning hard disk drives, which is the technology at issue in this case."  (Pl.'s Obj. at 11, Feb. 1, 2013, Docket No. 412.)  But Dr. Bajorek did not provide expert testimony about the issues that he has been retained to testify about in the present case – patent inventorship, patent infringement, or patent invalidity –in any of the three cases identified by Shukh.  Therefore, the opinions in the previous cases will not, as Shukh claims, help him establish bias and consistency, because the opinions are not germane to the topics at issue in the present lawsuit.  Furthermore, Shukh failed to demonstrate the relevance of receiving all information and documents related to any "cases, arbitration or other proceeding" in which Dr. Bajorek was retained as an expert.  Instead, the Magistrate Judge properly concluded that such broad discovery requests constituted a fishing expedition, not necessarily directed at obtaining relevant materials.

The Court also finds that the Magistrate Judge correctly concluded that Shukh failed to make a threshold showing that the information sought from Ms. Heitzman was relevant.  The only argument Shukh makes in his objections regarding relevancy is that "Ms. Heitzman's prior testimony is relevant to whether she applied the proper standard

and methodology to the facts of this case." (Pl.'s Obj. at 11.) It was not clear error to deem this broad, generic attack (which seems to prematurely introduce a *Daubert*-like determination) insufficient to warrant a fishing expedition into Ms. Heitzman's prior testimony. Shukh has not demonstrated how transcripts of depositions and court testimony as well as expert reports from the many cases in which Ms. Heitzman has testified (beyond the disclosures Ms. Heitzman has already made regarding cases in which she testified in the past four years) will help him assess whether Ms. Heitzman's methodology is appropriate, or whether she has properly applied the facts of this case to that methodology.

Importantly, the Court also notes that the Magistrate Judge declined to preclude the discovery sought in Shukh's subpoenas altogether. Instead, the Magistrate Judge noted that much of the discovery sought was inappropriate at this time, before Shukh had taken depositions of the experts. Therefore, the Magistrate Judge's protective order explicitly does not prevent Shukh from crafting a discovery request that seeks relevant documents and discovery with respect to the testimony of Dr. Bajorek and Ms. Heitzman.

Because the Court finds that the Magistrate Judge appropriately applied the Federal Rules of Civil Procedure in granting Seagate's motion, it will affirm the January 18, 2013 protective order.

## II.     MOTION TO EXCLUDE DR. BAJOREK

Shukh also moves to exclude the report and testimony of Seagate's expert Dr. Bajorek under Federal Rule of Civil Procedure 37 on the basis that Seagate failed to

make timely disclosures of the prior cases in which Bajorek testified within the four years prior to the date of his expert report, as required by Rule 26(a)(2)(B)(v). Shukh claims that the lack of timely disclosure prejudiced him in his preparation of the case.

Rule 37 provides that:

> ***Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . .

Fed. R. Civ. P. 37(c)(1). Rule 26(e) requires a party to supplement or correct its expert disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

Here, Seagate served Dr. Bajorek's expert report on November 30, 2012. When Seagate discovered the omission of the list of cases in which Dr. Bajorek had previously testified required by Rule 26(a)(2)(B)(v), it corrected Dr. Bajorek's report in accordance with Rule 26(e). Seagate corrected its error "in a timely manner" on January 2, 2013 – a little over a month after service of the initial report and well before Dr. Bajorek's deposition. Therefore, Rule 37 does not apply to exclude Dr. Bajorek's testimony, because Seagate did not "fail[] to provide information . . . as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1).

Even if Rule 37 did apply to Seagate's disclosure of cases in which Dr. Bajorek previously testified, it would not bar Dr. Bajorek's testimony in this case because any failure to disclose was "harmless." *See* Fed. R. Civ. P. 37(c)(1). Although Shukh's brief insinuates bad faith on the part of Seagate, Shukh has not demonstrated that the one

month delay in receiving information about the three prior cases in which Dr. Bajorek was retained as an expert impeded his ability to adequately conduct discovery.  Indeed, Shukh was able to ask Dr. Bajorek numerous questions about his previous cases during the January 24 deposition.  Because the late disclosure was harmless, the Court will deny Shukh's motion to exclude Dr. Bajorek's expert testimony on that ground.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections [Docket No. 412] are **OVERRULED** and the Magistrate Judge's January 18, 2013 Protective Order [Docket No. 407] is **AFFIRMED.**

2. Plaintiff's Motion to Bar the Expert Report and Testimony of Seagate's Expert Bajorek [Docket No. 413] is **DENIED**.


DATED:   September 30, 2013
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge